---

MEACO, The. See Cases Nos. 10,755 and 10,-756.

---

## Case No. 9,364.

### In re MEAD et al.

[28 Leg. Int. 277; [1] 8 Phila. 174.]

District Court, D. New Jersey. June 14, 1871.

BANKRUPTCY—PETITIONING CREDITOR — SERVICES AND COUNSEL FEES—COMMON BENEFIT —DOCKET FEE.

1. Upon application made to the court for payment to the petitioning creditor of $500 for personal services rendered and time spent by him in procuring the adjudication of bankruptcy. and of $1000 for indebtedness incurred by him for the professional services of counsel in the proceedings, and it appearing that the court had allowed to him payment in full for his expenses and costs. and that the aid rendered by counsel was chiefly to enable the petitioning creditor to hinder the other creditors of the estate, either from participating in the choice of an assignee or in the assets of the debtor. *Held*, that while the petitioning creditor is entitled to his costs and reasonable expenses out of the funds of the estate. in procuring the debtor to be adjudged a bankrupt. no compensation should be made to him for his personal services.

---

[1] [Reprinted from 28 Leg. Int. 277, by permission.]

2. The counsel fee allowed in such cases should only be for the services rendered by him in the proceedings for the common benefit of all the creditors.

3. The docket fee of $20 is only allowable in involuntary cases, and where there has been a denial and trial by jury.

[In the matter of B. F. Mead & Co., involuntary bankrupts.]

F. H. Nye, for petitioner.
A. C. Keasbey, for assignee.

NIXON, District Judge. This was a case of involuntary bankruptcy, and the petitioning creditor now files his petition in the court, setting forth "that in the discharge of his duty as such petitioning creditor, and in the conduct of the proceedings therein, in his behalf, and in the obtaining possession of the property of said bankrupts, and preserving the same until the appointment of an assignee, he necessarily performed many services and spent much time, and that the reasonable value of the same to the estate of said bankrupts, is five hundred dollars;" and further, "that he employed a solicitor and counsel in said matter, who carried on the proceedings on the part of said petitioner, and gave him advice in regard to the same, and that he incurred an indebtedness to him therefor in the sum of one thousand dollars." Upon the filing of the petition, a rule was taken, ordering the assignee to show cause before the court, on the 14th day of February last, why the prayer of said petitioner should not be granted. No testimony has been taken under the rule, but at the hearing, the respective counsel for the assignee and of the petitioning creditor, submitted to the court all the papers on file, as exhibiting the proceedings in the case, and agreed that the court should decide from their inspection, whether any, or, if any, what allowance should be made to the petitioning creditor for his own and his counsel's services, in procuring the adjudication of bankruptcy. These papers are very voluminous and have been carefully examined. It appears from them that the original petition was filed on the 26th day of August, A. D. 1869, and that Mead & Co. were adjudged bankrupts on the 14th day of September following. The first step taken by the counsel for the petitioning creditor, after the adjudication, was to apply to the court for an order excluding Henry A. Merrill and Harry Rockafellar, trading as Merrill & Co., and sixteen other firms, embracing nearly all the creditors of the bankrupts, from proving any debts or claims against the estate, and from voting in the choice of an assignee. Upon this application a rule to show cause was granted, a special examiner was appointed in New York, at the instance of the petitioning creditor, and a large amount of evidence taken before him, to establish the fact, that these creditors had forfeited all right to prove their claims and participate in the estate of the bankrupts, because they had been parties to an attempt to obtain a preference of their debts, contrary to the provisions of the bankrupt act [of 1867 (14 Stat. 517)].

As my predecessor, after hearing the testimony and the argument of counsel, made an order discharging the rule and requiring the petitioning creditor to pay the costs of the proceeding, it is proper for me to assume, that it was an unwarrantable attempt on his part, either to secure the position of assignee, by the exclusion of proper votes, or to receive the payment of his own claims in full, by the exclusion of the great bulk of the creditors, from their equal share in the assets. After the appointment of the assignee, the next step in the proceedings on the part of the petitioning creditor, appears to have been an application by him to the court, for an order "that he be paid and re-imbursed certain expenses incurred by him and his solicitor, as petitioning creditor, amounting in all to $454.27, out of moneys in the custody of the court, belonging to said estate." The court ordered, that a copy of the bill of items of said expenditures, be served, with a copy of the order, upon the assignee, and that he show cause against reimbursing said amount, before the court, on the eighth day of February following. On the return day of the rule, and upon proof being filed that a copy of the order and the bill of items of the petitioning creditor's claim, had been served upon the assignee, the court adjourned the hearing until the fifteenth, and the assignee not then appearing, an order was made that he pay, out of the monies of the estate, to the petitioning creditor, the amount of his claim, to wit, the sum of $454.26, for the expenses which he had necessarily incurred in having the debtors adjudged bankrupts. I have examined the bill of items thus ordered to be paid, and find that the petitioning creditor has been exceedingly minute and particular in his statement of his expenses; items, as small as six cents for ferriage to Jersey City, being charged. As it nowhere appears that he has performed any duty in reference to the bankrupt's estate, since this claim for reimbursement for his expenses, I must assume that all his expenses have been paid; and his present claim rests entirely upon his demand for payment for personal services.

The question as to what allowance should be made to the petitioning creditor out of the funds of the estate, for his instrumentality in having the debtor adjudged a bankrupt, has been much discussed, and there seems to be a general concurrence of the judges that he should be paid his costs and reasonable expenses. He acts for the equal benefit of all the creditors, and it is not equitable that they should enjoy the fruits of his labors without contributing a fair share towards the burden borne by him in gathering them. Chief Justice Chase, in Re Mitteldorfer [Case No. 9,675]; Judge Bryan, Re Williams [Id.

17,704]; Judge Benedict, Re Schwab [Id. 12,-498]; Woodruff, Circuit Judge, Re N. Y. Mail Steamship Co. [Id. 10,208]. Provision is made for his costs and fees in general orders in bankruptcy, rules 29, 31. What are reasonable expenses must depend upon the circumstances of each case. The expression has reference to necessary disbursements made in connection with the steps proper to be taken by the petitioning creditor, preliminary to, and attendant upon, the adjudication of bankruptcy. I can find no authority to extend it to compensation to such creditor for his time and personal services, and if I were permitted upon principle to give it any such construction, I do not think it would be to the general interests of creditors that I should do so, in this or any other case. It would be holding out encouragement to persons to make a business of putting their debtors in bankruptcy. The application, therefore, of the petitioning creditor for an allowance of five hundred dollars for his services and time, in addition to the $454.27 paid to him for the expenses incurred by him, is denied.

2. His petition further states, that in carrying on the proceedings against the bankrupts, it became necessary for him to employ counsel, and that he has hence incurred an indebtedness to the sum of $1000, for which he asks an allowance. It is just and proper to allow a fair counsel fee in such cases. But it should be only for the services rendered by him in proceedings for the common benefit of all the creditors, and such are the tendencies now a days, of courts as well as municipal corporations, and state and national legislatures, to be liberal and generous with other people's money, that great care should be exercised lest injustice be done to the creditor, by a thoughtless and undue liberality in such allowances. Where the petitioning creditor, as in this case, attempts, after adjudication, to use his position to exclude other creditors of the bankrupt, from participating, either in the choice of an assignee or in the assets of the estate, and so signally fails in the effort, that the court is constrained to charge him with the costs of the proceedings, it is hardly respectful to the judgment of the court, that he afterwards file a petition, asking to be allowed $1000 for counsel fees, for professional service, the bulk of which, as the items of the account show, was rendered in these unjustifiable proceedings against the interests of the general creditors. Upon presenting this matter to the court, the counsel for the assignee, hinted his opposition to any allowance for counsel fees, upon the ground, that the evidence disclosed gross professional impropriety on the part of the counsel employed by the petitioning creditor.

I have examined the testimony in reference to this charge, and find that he first acted as counsel for the debtor, in an effort to have his assets distributed by one of the creditors, for the equal benefit of all, without taking the estate into the bankrupt court, and that afterwards, when that course of settlement was interrupted by the intervention of the petitioning creditor, he came into this court, as his counsel, and attempted to exclude the other creditors from sharing in the estate, upon the allegations, that their proceedings, which he had advised, was a fraud upon the bankrupt law. I cannot but perceive that such a course of proceeding is not marked by that nice sense of delicacy and honor, which ought to characterize the gentlemen of the profession; and if the question was one of compensation to him upon his application I might feel constrained to refuse to make an order for an allowance.

But the real question is, whether the petitioning creditor has incurred liability in instituting proceedings for the pecuniary advantage of the other creditors, and whether the fund, secured, in part at least by his diligence, should be made to contribute towards re-imbursing him for what he has become liable. Looking at the matter in this light, I think that a reasonable fee should be allowed, for filing the petition and obtaining the order of adjudication, which is all the service that he seems to have rendered for the general benefit of the creditors. His other acts appear to have been at the instance of the petitioning creditors, and against the interests of the other creditors, and for these he must look to his client for compensation. As there was no denial filed, and no contest made by the debtor upon the petition, I cannot allow the docket fee of $20, which the statute gives upon a trial. I am aware that Mr. Bump, in his excellent and well arranged work, on the Law and Practice of Bankruptcy (page 195), states that, "in all cases in involuntary bankruptcy, the appearance fee of $20, is taxable in favor of the attorney of the successful party;" but neither the authority which he quotes, nor the act of congress regulating fees, sustains his position. He refers to Gordon v. Scott [Case No. 5,620], and a careful examination of that case, will show that the docket fee is allowable only in those involuntary cases, where there has been a trial by jury. The statute of February 26th, 1853 (10 Stat. 161), authorizes it only where there is "a trial before a jury in civil and criminal cases, or before referees, or on a final hearing in equity or admiralty."

Let an order be drawn in this case, refusing to the petitioning creditor any farther allowance, except the sum of sixty dollars, a reasonable compensation to his counsel for filing the petition, and obtaining an adjudication of bankruptcy.