CANADA—ATLANTIC & PLANT S. S. CO., Limited, v. FLANDERS.

(Circuit Court of Appeals, First Circuit. May 23, 1906.)

No. 637.

1. TRIAL—OFFER OF PROOF—DOCUMENTARY EVIDENCE.
    A general offer of documentary evidence, without any statement of its purpose, is insufficient under the practice in the federal courts as the basis for an exception to a ruling excluding the offered evidence.

2. CORPORATIONS—POWERS OF COMMITTEE—ABSENCE OF MEMBER.
    The absence of one member of an executive committee of three elected by the board of directors of a corporation under authority from the stockholders does not necessarily render invalid a contract made by the committee appointing an agent for the corporation whose powers and duties were only of an ordinary character, and, also, were expressly limited to · such as should be given him by the board of directors.

3. SAME.
    Quere, as to what powers may lawfully be vested in a so-called executive committee.

In Error to the Circuit Court of the United States for the District of Massachusetts.

William M. Richardson, for plaintiff in error.

George W. Anderson (Edward H. Ruby, on the brief), for defendant in error. ⸰

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This suit was brought for breach of the following alleged contract:

"Memorandum of agreement made in duplicate, and entered into this 28th day of April, in the year of our Lord, one thousand nine hundred and four:

"Between the Canada-Atlantic & Plant Steamship Company, Limited, a body corporate, incorporated by special act of the Parliament of the Dominion of Canada, hereinafter called the company of the first part, and J. A. Flanders, of Boston, in the county of Suffolk, and commonwealth of Massachusetts, general agent, of the other part.

"Whereby it is agreed as follows:

"(1) The said J. A. Flanders shall be the general agent of the company, and as such general agent shall do and perform the duties and exercise the

powers which from time to time may be assigned to or vested in him by the directors of the company.

"(2) The said J. A. Flanders shall hold said office subject as hereinafter provided, for the term of five years from the 1st day of May, 1904.

"(3) The said J. A. Flanders, unless prevented by ill health, shall during the said term 'devote the whole of his time, attention, and ability to the business of the company, provided, however, that he, the said J. A. Flanders, may act as agent for various steamship lines, it being expressly understood and agreed between the parties hereto that all commissions and wharfages received by him as said agent, shall be paid over by him to the company, and shall become the revenue of the company. The said J. A. Flanders shall obey the orders from time to time of the board of directors, and in all respects conform to and comply with the directions and regulations given and made by the board of directors, and shall well and faithfully serve the company, and shall use his utmost ability to promote the interests thereof.

"(4) There shall be paid to the said J. A. Flanders as general agent salary as follows: The sum of three thousand ($3,000) dollars per annum.

"(5) The said salary shall commence on the 1st day of May next, and shall be paid upon the first business day of each and every month.

"(6) The said J. A. Flanders shall be at liberty to resign the office at any time by giving the company three calendar months' notice of his desire so to do.

"(7) During the continuance of this agreement, while filling the position of general agent under this agreement, the office of general agent shall be situate at Boston, in the county of Suffolk.

"In witness whereof Alfred S. Hayes, president of the said Canada-Atlantic and Plant Steamship Company, Limited, has hereunto set his hand and affixed the corporate seal of the said company, and the said J. A. Flanders has hereunto set his hand and seal the day and year first written above.

"J. A. Flanders. [Seal.]

"Canada-Atlantic & Plant Steamship Company, Ltd.,

"Alfred S. Hayes, President. [Seal.]

"Signed, sealed, and delivered in presence of

"F. B. Monson."

The declaration alleged that the defendant corporation, on the 1st day of December, 1904, refused to allow the plaintiff to continue his duties under this contract or pay him his compensation therefor, and has ever since refused so to do. The verdict was for the plaintiff, and thereupon the defendant sued out this writ of error. The contract is claimed to have been authorized by its executive committee, according to the following minutes:

"Meeting of the executive committee of the Canada-Atlantic & Plant Steamship Company, Limited, held April 28, 1904, at 12 o'clock noon, at 935 Tremont Building, Boston.

"Present, George E. Gale and Alfred S. Hayes. Alfred S. Hayes in the chair.

"Upon motion it was unanimously voted that the president be authorized to make with J. A. Flanders, general agent of the company, at Boston, an agreement in writing for the period of five years at a salary of three thousand ($3,000) dollars per year, beginning with 1st day of May, 1904, and terminating on the last day of April, 1909."

This committee was appointed by virtue of one of the by-laws of the corporation, enacted by the corporation itself; that is, by its shareholders, as follows:

"The directors shall annually appoint from among themselves two directors, who, with the president, shall form an executive committee, and said committee shall have full powers of the board of directors when said board is not in session."

At the time the meeting of the executive committee was held, and the contract in suit was made, the committee consisted of Alfred S. Hayes, who was president, George E. Gale, who was a director, and Alonzo W. Perry, who was another director. Alonzo W. Perry at that time held practically all the stock of the corporation, and controlled its meetings; and· it was within his power to seat and unseat the board of directors. He was also treasurer. He was absent on a visit to Japan from January, 1904, to May, 1904. He returned at the latter date, and at some time thereafter discovered the existence of the contract with the plaintiff; but, so far as brought to our attention, there was no official action in contravention of the contract until the meeting of the directors held on August 10, 1904, when the following votes were passed:

"On motion of Mr. H. McInnes, seconded by **Mr. W. H. Fulton,** it was resolved that all acts and resolutions passed by Messrs. Hayes and Gale as an executive committee, as per minutes submitted, said executive committee meetings' minutes dated April 28th, June 6th, and June 24th, be rescinded, and the attempted confirmation of the same by the directors, at meetings held **July** 2d and 4th, be also rescinded.

"On motion, duly seconded, it was resolved that notice be transmitted to **Mr. Flanders,** notifying him of the rescinding of the contract made with him at the meeting of the executive committee April 28th."

It is to be noticed that these votes did not declare the proceedings of the executive committee illegal or void, but merely rescinded them without giving a reason therefor. A distinction was made in the votes between the proceedings in the executive committee and the action of the directors at sundry meetings in July, because in connection with the latter the word "attempted" is used.

Quite simultaneously, if not simultaneously, with the contract with the plaintiff and the action of the executive committee in reference thereto, and in the absence of Mr. Perry, an increase of the stock of the corporation was made. Prior to that the outstanding stock was 4,000 shares, practically all of which, as we have said, were held by Mr. Perry. The new stock was 4,500 shares, all of which was issued to parties other than Mr. Perry, thus apparently taking the control out of his hands. The corporation, it should be observed, was created by virtue of the laws of the Dominion of Canada. Subsequently, on judicial proceedings in the courts of Nova Scotia, which were initiated in the name of Mr. Perry and the defendant corporation, a decree was entered on May 15, 1905, adjudging the issue of the new stock illegal. Mr. Flanders, the plaintiff in this case, was made one of the parties defendant in that proceeding.

At some time subsequent to the return of Mr. Perry from Japan, Mr. Perry was elected president of the corporation, and on November 9, 1904, he wrote the plaintiff the following letter:

"Nov. 9, 1904.

"J. A. Flanders, Agt., Boston, Mass.—Dear Sir: On the 10th day of August I had a conversation with you in regard to the position which you now occupy, and I told you that I had two other parties in view, and that the salary, if you remained after October 1st, would be the same as you received a year ago, viz., eighteen hundred dollars ($1,800) per annum. You told me not to engage either of the parties whom I had for the position, I supposed by that that you

fully intended to stay at that price. During my absence you declined to accept a check for $150, on the 1st day of November for your October salary, and took money which was due the company and appropriated it to your own use. I cannot overlook what I consider, not only a breach of honesty, but also a disregard of business principles, and that there may be no misunderstanding between you and me in the future, I respectfully notify you that your services will not be required after Dec. 1st. If you desire to discontinue your duties previous to that time, I will pay you your salary to that date.

"Yours truly,                              A. W. Perry, President."

It will be observed that this letter does not claim that the contract with the plaintiff was void for want of authority to make it, but it rests on the ground that the plaintiff had been guilty of a breach of honesty and of disregard of business principles. The meaning of this is apparent from the fact that, in defense to this suit, the main issue raised by the corporation was that Flanders had joined in the illegal issue of the new stock, and that the contract sued on was the price of his joinder, so that the whole transaction was fraudulent. That issue was tried to the jury, but, under rulings which authorized the jury to distinguish between the transactions with reference to the issue of new stock and the contract in suit, the jury must have found that they were disconnected, and that the present contract was valid notwithstanding that defense.

The other point taken in defense was that the proceedings of the executive committee were invalid on account of the absence of Mr. Perry, on the ground that the presence of every member of the committee was necessary in order to give effect to its transactions. This proposition, however, so far as the record is concerned, was a novel one, made first after the plaintiff was discharged. At any rate, the record does not show that at any time prior to the discharge of the plaintiff any claim was made with reference to the question of a quorum of the executive committee of the character now before us.

Before coming to the major proposition involved, we will notice some minor ones which are easily disposed of. The defendant claims that the president, then Mr. Hayes, had no implied authority to bind the corporation by the contract of April 28th, and no express authority therefor. As the case rests so far as we are concerned on the action of the executive committee, we are unable to perceive the materiality of these propositions. There was offered in evidence by the defendant a letter from Mr. Perry as president to the plaintiff, of December 2, 1904. The court refused to admit this letter, and exceptions were taken. This letter refers to the contract, and makes no claim that it was originally illegal for any want of power in the executive committee; but it repeats that it was given as a reward for the plaintiff's part in the conspiracy in regard to the issue of the new stock. We are unable to see that the letter has any probative force; and, so far as we can discover, its admission was properly refused. It is also claimed that the court should have directed a verdict for the defendant; but it is so clear that, if the rulings which we are to consider were correct, the case was one peculiarly for the jury that we are not obliged to give this objection any particular consideration.

On the question of fraudulent conspiracy on the part of the plain-

tiff the defendant offered to put in evidence the judicial proceedings at Nova Scotia. This offer was made in the following manner, as shown by the record:

"The defendant offered in evidence the entire record, pleadings, affidavit, memorandum of court's decision, and interlocutory decree, of the proceedings in the Supreme Court of Nova Scotia, relative to application for a preliminary injunction to restrain the transfer and disposition of the 4,500 shares of stock, a copy whereof is hereto annexed and marked Exhibit B. On the plaintiff's objection the court declined to admit the same in evidence, and the defendant duly excepted."

Of course, so broad an offer as this, without any statement of the reasons or purposes connected therewith, is insufficient according to the rules of practice in the federal courts to lay the basis of an exception. We understand, however, that the defendant's claim is that the record was admissible as conclusive evidence of bad faith in the particulars to which we have referred. The claim that Flanders was guilty of bad faith in connection with the issue of new stock was, of course, a link in the claim that the contract sued on was part of a conspiracy as maintained by the defendant; but our attention has not been called to any portion of the record of the judicial proceedings in Nova Scotia showing that such bad faith on the part of Flanders was made an issue. We find nothing in the judgment to that effect. It is admitted that the court adjudged that the new stock was illegal; but, in the absence of something more specific brought to the attention of the trial court and to ourselves, we are not called on to investigate the question whether its judgment was an estoppel on the matters in issue here, or even bore on them. On the whole, it is enough to say that, according to the rules of practice of the federal courts to which we have referred, there is nothing here which we can consider.

We believe this leaves only one question for our determination, and that apparently is the substantial one on the record before us. The assignment of errors alleges several matters in reference to the proceedings of the executive committee as to which the only point now relied on is as follows: that two members of the executive committee had no power or authority to make, or to authorize the president to execute, the contract declared on, and that in the absence of the third member, the remaining two had no authority in that respect. In disposing of this question, we do not wish to have it understood that we are committed to the legality of the constitution of an executive committee in which should be vested all the powers of the board of directors of a corporation. Respectable authors seem to be divided on that proposition. Thompson on Corporations, § 8481; 2 Cook on Stockholders (5th Ed.) § 2715. The Supreme Court, in Union Pacific R. Co. v. Chicago & Rock Island, 163 U. S. 564, 597, 16 Sup. Ct. 1173, 41 L. Ed. 265, seems to give affirmative support where it uses the following language:

"Thus the stockholders authorized the board of directors to delegate the power to the executive committee to do any and all acts which the board itself was authorized to do. The executive committee derived its authority from the stockholders through the board of directors."

On the other hand, the better rule seems to be that given in Charlestown Boot & Shoe Company v. Dunsmore, 60 N. H. 85, where it was held that not even the stockholders could delegate all the powers of the board of directors as constituted by law. However, this question . is not urged on us; and probably it could not be in this particular case, because the contract with Flanders, in view especially of the careful limitations by virtue of which his powers were to be such as might be assigned to him from time to time by the directors, and were always to be exercised in obedience to them, and also in view of the apparent magnitude of the operations of the corporation, was of such an ordinary character that its negotiation and execution were apparently within the usual powers which might be given to any committee of the directors. Therefore, the only point brought before us is the fact of the absence from the meeting of the executive committee of Mr. Perry, and the question arising therefrom whether two of the committee constituted a quorum.

It is apparent from what we have already said that the defendant corporation slept on this question so long that it is hardly open; but there can be no doubt that, with reference to any authorization of a personal character to two or more persons, especially in connection with trusts under wills and other formal instruments, the general rule applies as stated by section 42 of Story on Agency, that an act is not valid unless all to whom it is committed concur. The same rule applies at common law with reference to an arbitration consisting of two or more persons, although not so under the international law. On the other hand, all the authorities establish beyond question that unless there are some special circumstances committees recognized by the law, under whatever name constituted, performing public duties, may act if a majority is present. Many authorities and the almost universal practice bring boards of directors of business corporations, and committees of such boards when authorized by the by-laws, within the rule applicable to committees in public affairs; so that, in cases like this at bar, no court would now be justified in holding that the business of a corporation is to be obstructed by reason of an absence like that of Mr. Perry, or of sickness or other contingencies of that character. This distinction between the acts of merely two or more private individuals and the acts of boards and committees as such was set out by Mr. Justice Blodgett in Burleigh v. Ford, 61 N. H. 360, 361, and is made in Thompson on Corporations, vol. 3, § 3910. We have no doubt it exists; so that, whatever hesitation we might have, either as to the limits of the authority of any executive committee whatever or as to the power of a majority of any committee in matters of fundamental importance to a corporation, we are of the opinion that this proposition of the plaintiff in error cannot be maintained so far as this particular contract is concerned.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers his costs of appeal.