## THE GOLDEN ROD.

(Circuit Court of Appeals, First Circuit. October 23, 1913.)

### No. 1010.

1. WHARVES (§ 19*)—CLAIM FOR WHARFAGE—LACHES.

The rule of Canada-Atlantic Co. v. Flanders, 145 Fed. 875, 880, applied as against a corporation which slept on the question so long that it was hardly open.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 30–34; Dec. Dig. § 19.*]

2. WHARVES (§ 19*)—WHARFAGE.

In this case the only real question was the reasonable amount due for wharfage where there was no specific rule applicable; and, being a mere question of fact, the court felt obliged to follow the decision of the District Court.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 30–34; Dec. Dig. § 19.*]

Appeal from the District Court of the United States for the District of Maine.

Suit in admiralty by the Islesboro, Castine & Belfast Steamboat Company against the steamer Golden Rod; the Eastern Bay Steamboat Company, claimant. Decree for respondent, and libelant appeals. Affirmed.

For opinion below, see 197 Fed. 830.

Edward C. Plummer, of Bath, Me., for appellant.

John R. Dunton, of Belfast, Me., for appellee Eastern Bay Steamboat Co.

Before PUTNAM, DODGE and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. The appellant filed a libel in admiralty in the District Court for the District of Maine to collect wharfage from

the steamer Golden Rod, owned by the appellee. The Golden Rod for three summer seasons had been making use of a wharf at Brooksville, constructed and owned in part by one Tapley and in part by the libelant. The libelant had been using the wharf for its own steamer or steamers, and there is no basis for claiming that the wharf was one which any steamer was free to use irrespective of the consent of its owners; so that the Golden Rod must have been chargeable only in trespass, or on a formal or informal contract. The only part of the libel which we need specially refer to alleges that the libelee, as owner of the Golden Rod, while engaged in the prosecution of her trips, stopped her at this wharf—

"receiving and landing passengers and freight there, and made use of the libelant's building and storehouse on said wharf for the accommodation of freight and for other purposes, for which use of said wharf the said steamer agreed to pay a reasonable compensation, and for said use the libelant is entitled to recover wharfage at the rate of $30 per month."

It is not necessary to discuss many questions discussed by the parties or by the District Court, because the libel is based directly on the alleged agreement to which we have referred. The facts are explained at full length in the opinion of the learned judge of the District Court, and we need not refer to them further, except as we herein state.

The wharf was built under an arrangement between the libelant and one Tapley, who owned the upland and the flats over which a part of the wharf extended. He testified that "they," meaning the libelant, "built the head thirty feet square, I think, to join my part." He had already said that his part was about 300 feet long and 12 feet wide, and that it extended from the upland to low-water mark. Without previous consultation with the libelant, so far as we find in the record, Tapley made an arrangement with the captain of the Golden Rod that the Golden Rod might land at the wharf, paying, as he testified, "$5 a month for the outer part of the wharf that belonged to the steamboat company" and $10 a month "for my part of the wharf, and acting as agent, making in all $15 a month." He also testified that the first subsequent month he received the $5, and paid it to the purser of the Silver Star, which was the libelant's steamer; and the parties put in the record a receipt, as follows:

"May 14, 1906, received from Eastern Bay Steamboat Company five dollars for wharfage at W. Brooksville.                    H. D. Pendleton."

The Eastern Bay Steamboat Company was the owner of the Golden Rod, and H. D. Pendleton was the purser of the libelant's steamer, as already stated.

[1] The learned judge of the District Court says that the libelant knew of this arrangement. We are unable to find the proof thereof in its entirety; but the circumstances, including the fact that the Golden Rod used the wharf three summer seasons, covering a period of two years and a half, or what, so far as these parties are concerned, was three years, before this libel or any other proceeding was taken, justify us in holding that it is apparent that the libelant "slept on this question so long that it is hardly open," a now well-recognized rule of the fed-

eral courts, stated by us briefly in Canada-Atlantic Co. v. Flanders, 145 Fed. 875, 880, 76 C. C. A. 1.

At any rate, the libel proceeds on the hypothesis, with the direct allegation, that there was a contract for the use of the wharf by the Golden Rod. This is supplemented by the testimony of Fields S. Pendleton, acting in behalf of the libelant, to the effect that, shortly after the Golden Rod commenced using the wharf, he called on her representatives in reference thereto; he then said he had been told that the Golden Rod had received permission from Tapley to use the wharf, paying .wharfage at the rate of $5 a month; and he then made a demand on those representatives, stating that the "price would be $30 a month." Never at that time, or subsequently, was there any repudiation of Tapley's authority to make some arrangement. The only point open was the demand for $30 a month instead of $5. Even if the libelant had the right to refuse to let the Golden Rod come to the wharf, it never undertook so to refuse. In no event was it within the libelant's power to fix the rate per month in excess of that named by Tapley without the owner of the Golden Rod assenting thereto. In other words, this interview left the case precisely as stated in the libel.

There was therefore in effect an agreement between the parties that the Golden Rod might use the wharf, "paying therefor a reasonable compensation," without any conclusion between the parties as to the rate at $30 a month, or at any other rate. Consequently the whole case was left closed except as to the rate per month. The action of Tapley in receiving rent was not objected to. This was paid to him for the three seasons.

[2] The only thing which remained open was for the Golden Rod or her owner to pay what might be regarded as reasonable compensation, to be settled by the court if not agreed on by the parties, with a deduction from the amount thus to be settled of $5 a month. Rather than have the case go back, with the expense of further proceedings, we have carefully examined the record, and endeavored to ascertain a satisfactory result on this point. We have not been able to reach one in all respects thus satisfactory. The position of this wharf was peculiar for several reasons which are apparent, and which, therefore, it is not necessary to recite. Nevertheless, there were several witnesses who testified in substantially the language of Captain Gifford S. Pendleton, the president of the libelant corporation, who on direct examination fixed the rate of $30 a month, but on cross-examination said that perhaps $5 a month was about what was usually paid for wharfage in that locality. Certainly there is sufficient of this to sustain the finding of the learned judge of the District Court, that, in his opinion, this wharfage of $5 a month was the customary wharfage in that locality; and there is nothing in the record which would justify us on appeal, according to the practical rules with reference to appeals, in setting that opinion aside.

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.