GRAHAM MFG. CO. et al. v. DAVY–POCAHONTAS COAL CO.

(Circuit Court of Appeals, Fourth Circuit. November 29, 1916.)

No. 1442.

1. BANKRUPTCY $\Longleftrightarrow$92—INVOLUNTARY PROCEEDINGS—MOTION TO DISMISS PETITION—EFFECT.

A motion to dismiss a petition for involuntary bankruptcy is in the nature of a demurrer, and in determining it the facts alleged in the petition will be considered true.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 107, 108, 133–136; Dec. Dig. $\Longleftrightarrow$92.]

2. BANKRUPTCY $\Longleftrightarrow$81(1) — INVOLUNTARY PROCEEDINGS — PETITION — SUFFICIENCY.

A petition for involuntary bankruptcy, which alleged that defendant was insolvent, and that within four months preceding the filing of the petition the defendant, while insolvent, committed an act of bankruptcy in that, being insolvent, it applied for a receiver for its property, is sufficient to give the court jurisdiction, though it does not set forth the evidence upon which it relies to establish those facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 113–116, 125; Dec. Dig. $\Longleftrightarrow$81(1).]

3. BANKRUPTCY $\Longleftrightarrow$63—ACT OF BANKRUPTCY—APPOINTMENT OF RECEIVER—APPLICATION BY CORPORATE OFFICER.

Where an insolvent corporation, against which a creditors' suit was brought in the state court, procured the appointment of a receiver therein by an answer and cross-bill filed in the name of its president, who was a defendant, and who with one other stockholder owned the majority of the stock and controlled the corporation, the corporation applied for the appointment of the receiver within the act of Congress (Act July 1, 1898, c. 541, 30 Stat. 544) making that an act of bankruptcy; it not being necessary that the application be by a bill or cross-bill filed in the name of the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. $\Longleftrightarrow$63.]

4. BANKRUPTCY $\Longleftrightarrow$20(1)—INVOLUNTARY PROCEEDINGS—JURISDICTION—CONTROL BY STATE COURT.

The fact that a state court had assumed jurisdiction over the property of an insolvent corporation in a creditors' suit more than four months before the filing of an involuntary petition in bankruptcy against the corporation does not deprive the bankruptcy court of jurisdiction, where the application for the appointment of the receiver in that suit, which was the act of banruptcy relied on, was made within four months of the filing of the petition; the bankruptcy court's jurisdiction being exclusive and supreme.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. $\Longleftrightarrow$20(1).]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston, in Bankruptcy; Benjamin F. Keller, Judge.

Involuntary proceeding by the Graham Manufacturing Company and others, as petitioners, against the Davy-Pocahontas Coal Company. From a judgment granting the alleged bankrupt's motion to dismiss the petition, petitioners appeal. Reversed.

Charles Markell, of Baltimore, Md. (George S. Couch, Jr., and Brown, Jackson & Knight, all of Charleston, W. Va., Jacob France, France, McLanahan & Rouzer, and Haman, Cook, Chesnut & Markell, all of Baltimore, Md., on the brief), for appellants.

James Thomas, of Baltimore, Md., and Buckner Clay, of Charleston, W. Va. (Price, Smith, Spilman & Clay, of Charleston, W. Va., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The appellee, the Davy-Pocahontas Coal Company, against whom the petition in bankruptcy was filed in this case, is a corporation incorporated under the laws of the state of West Virginia, for the purpose of acquiring, owning, and holding coal and other mineral lands, developing, mining, and producing therefrom coal and other minerals, and making sale of its coal and minerals so produced. The capital stock of this corporation is $500,000. The real property of the Davy-Pocahontas Coal Company consists largely, if not entirely, of a tract of land aggregating 4,040 acres, which it owns in fee simple, lying in the very heart of the Pocahontas coal fields of West Virginia. This property is subject to a deed of trust to secure an issue of 300 bonds of the denominations of $1,000 each, of which 297 are outstanding, and a second deed of trust securing an issue of $120,000 of notes, of which approximately $80,000 are issued and outstanding. Upon this property are two coal operations; one on the Welch vein of Pocahontas coal, and the other on the vein locally known as the Davy-Small seam.

On the 10th day of July, 1915, a judgment creditors' bill was instituted by Abney-Barnes Company and others against the Davy-Pocahontas Coal Company, W. L. Taylor, James A. Strother, and the two trustees under the deed of trust before mentioned, and, in compliance with the statutory provisions of the state of West Virginia, all other known lien creditors were also made parties. On the 4th day of November in the year 1915, W. L. Taylor, codefendant in this suit, filed his answer and cross-bill in the same, alleging in substance:

"That the Davy-Pocahontas Coal Company is a corporation organized and doing business under the laws of the state of West Virginia, with its principal office and place of business in the county of McDowell, state of West Virginia; that it is the owner in fee of about 4,000 acres of land in the said county of McDowell, the chief and principal value of the same being for the coal deposits therein and thereunder, and that the value of said lands for coals therein and thereunder and as a coal-mining proposition is very considerable, and largely in excess of the present investment therein, and the debts and obligations due by said company; that for some years past the said Davy-Pocahontas Coal Company has been engaged in the business of mining coal from said lands, and for the purpose thereof has expended very large sums of money in the development of said lands for coal-mining purposes and in improvements placed thereon for that purpose; that the amounts so expended by the said company will approximate the sum of one hundred and fifty thousand dollars ($150,000); that the said land is so situated, and the coal therein and thereunder is of such quality and quantity, that the said lands can be profitably mined for coal and developed as a coal-mining proposition."

On the 13th day of January, 1916, the Graham Manufacturing Company, a judgment creditor of the Davy-Pocahontas Coal Company in

the sum of $66, M. B. Posterwaite, assignee of Hutchinson-Stephenson Hat Company, a corporation, a creditor of the Davy-Pocahontas Coal Company in the amount of $8.65, and J. A. Donahue, assignee of the Bluefield Furniture Company, a corporation, a judgment creditor in the amount of $442.11, filed an involuntary petition in bankruptcy containing the following allegations:

"That within four months next preceding the filing of this petition the said Davy-Pocahontas Coal Company, a corporation, while insolvent, committed an act of bankruptcy, in that it, being insolvent, did apply for a receiver for its property, to wit, on the 4th day of November, 1915, in a certain suit in equity theretofore instituted on the 10th day of July, 1915, by Abney-Barnes Company, a corporation, et al., against said Davy-Pocahontas Coal Company, a corporation, et al., in the circuit court of McDowell county, West Virginia, and then pending, in which suit no application for receiver had theretofore been made in the original bill or otherwise, the said Davy-Pocahontas Coal Company did procure application for a receiver for its property to be made in the form of a so-called answer and cross-bill in the name of one W. L. Taylor, codefendant in said suit then pending, said Taylor being in fact, as alleged in said answer and cross-bill, the president and a large stockholder of said Davy-Pocahontas Coal Company, a corporation, owning, together with one R. E. Wood, a majority of the stock of said company; that said Taylor, said Wood, and their associates in fact were owners of a majority of the stock of said Davy-Pocahontas Coal Company, a corporation, and in fact dominated and controlled said corporation, and the said Davy-Pocahontas Coal Company, a corporation, through said controlling stockholders, directors, and officers, did procure such application for receivers to be made in the name of said Taylor as aforesaid, but in the interest of said corporation and said controlling interests; and said Davy-Pocahontas Coal Company, a corporation, did, upon the presentation of said so-called answer and cross-bill, applying for receivers, appear by counsel before said circuit court of McDowell county, and did assent to and procure on said 4th day of November, 1915, the appointment by said court of William R. Yaeger, George W. Atkinson, and J. Craig Miller as receivers for all the property, real and personal, and all other assets of the Davy-Pocahontas Coal Company, a corporation, of every sort and description, including real estate, all the counsel so appearing before said court as counsel for said Taylor, or for said Davy-Pocahontas Coal Company, a corporation, having for a long time prior thereto been in fact counsel for said Davy-Pocahontas Coal Company, a corporation, and being in fact then so acting in applying for and procuring said appointment of receivers for said property of said Davy-Pocahontas Coal Company."

The above allegations were based upon the averments contained in the answer filed by the alleged bankrupt in the suit in the state court to which reference has been made. The answer, among other things, contained the following:

"That in the process of developing said lands, and installing improvements thereon for that purpose, a large sum of money was required to be expended before profitable returns from said lands could be had, and that prior to the mining operations of said company being placed upon a paying basis, which could be done, there arose amongst the stockholders and directors of the said company serious disagreements and dissensions, which still continue. Such dissensions were and are that various of the stockholders of the said company and certain of the directors thereof would not give any assistance in securing the necessary finances to insure proper and requisite development of the company as a coal-mining property, which was essential in order that profits could be made therefrom; but said stockholders and directors so hampered by their dissensions and nonassistance the other stockholders, directors, and managers of the company that said development could not be carried on to the requisite extent, nor to the extent of the company meeting its current obligations and the discharge of its past-due obligations, and such acts and do-

ings resulted in the said company being largely indebted to various persons in the prosecution of the development work and the mining work carried on during said period of development, the mines of said company still being in a state of development. The said company, therefore, became largely indebted to various people, in various amounts, and various of its creditors instituted against it suits of various kinds and character, which were pursued to the extent of execution and sale, thereby materially crippling and hampering its successful mining of coal and causing great sacrifice of the property and assets of the company."

The court below dismissed the petition and entered a decree accordingly, from which an appeal was taken to this court.

The court below held that, inasmuch as the application for the appointment of a receiver was not made in the form of a bill or cross-bill and in the name of the Davy-Pocahontas Coal Company as plaintiff or cross-plaintiff, the facts set forth therein do not constitute an act of bankruptcy.

[1] The motion to dismiss the petition being in the nature of a demurrer, the facts set forth therein, which clearly present the questions involved, will be considered as true. Therefore, in order to reach a correct conclusion, we must determine the question, "Can a debtor being insolvent apply for a receiver for his property" and thereby avoid the consequences incident to committing an act of bankruptcy, by making the application in the name of another?

[2] The petition in this instance does not allege the evidence upon which it relies to establish the facts as set forth in the petition, nor do we think necessary for a proper determination of the questions now at issue between the parties; the jurisdictional averments being sufficient, as we think, to bring the case clearly within the purview of the statute, to wit: That the defendant is "insolvent" in the sense in which the term is used in the statute, and "within four months next preceding the filing of this petition" the defendant, "while insolvent," committed the respective acts of bankruptcy as alleged, and "that, being insolvent, it did apply for a receiver for its property." These averments are, in our opinion, sufficient to give the court jurisdiction of the subject-matter of this controversy.

[3] However, it is insisted further, as we have stated, that the court below was not in error in holding that this petition should be dismissed upon the ground that the application for the appointment of a receiver in the state court was not made in the form of a bill or cross-bill in the name of the Davy-Pocahontas Coal Company as plaintiff or cross-plaintiff. This question was decided by the Circuit Court of Appeals for the Sixth Circuit in the case of James Supply & Hardware Co. v. Dayton Coal & Iron Co., 223 Fed. 991, 139 C. C. A. 367. The court in discussing the matter said:

"There was thus substantial testimony tending to show that the receivership was procured at the instance of and by concert between Peat, Whitaker, and Miller. If the receivership was so procured by actual authority of the Dayton Company, and on its behalf, it was as effectively an act of bankruptcy as if the suit had been directly in the name of that company as complainant (Exploration Co. v. Pacific Co., C. C. A. 9, 177 Fed. 825, 839, 101 C. C. A. 39), and the District Court so held. Wheeler v. Denver, 229 U. S. 342, 33 Sup. Ct. 842, 57 L. Ed. 1219, contains nothing to the contrary. What is there said re-

specting collusion relates merely to jurisdiction. Similar holdings are found in Re Metropolitan Ry. Receivership, 208 U. S. 90, 110, 28 Sup. Ct. 219, 52 L. Ed. 403, and American Brake, etc., Co. v. Pere Marquette R. R. Co. (C. C. A. 6) 205 Fed. 14, 18, 125 C. C. A. 322. Here the question of intent to evade the provisions of the Bankruptcy Act is involved. It is immaterial that the receivership was not ordered because of insolvency. If the corporation was actually insolvent at the time receivership was applied for, it is enough. Hill v. Electric Co. (C. C. A. 6) 214 Fed. 243, 130 C. C. A. 613.

"We are not impressed by the proposition that the application for a receiver by this corporation would not be an act of bankruptcy, unless shown to have been expressly authorized by formal action of its board of directors or stockholders; and the District Judge did not so decide. Not only is there nothing in the record to indicate that the managing director of this British corporation lacked authority to direct such action, but the testimony is inferentially to the contrary, and is specifically that he had complete control of the company's affairs. If Donaldson individually lacked full control, there was testimony that Watson & Co. represented the stock control, and, inferentially at least, had whatever control Donaldson lacked; and it is perhaps of some interest in this connection that the amended bill in the insolvency proceeding by implication treats the members of Watson & Co. as Whitaker's principals. We think the record did not impugn the existence of full authority on the part of Donaldson and Watson & Co. to direct the receivership, and thus the commission of an act of bankruptcy. Exploration Co. v. Pacific Co. (C. C. A. 9) 177 Fed. 825, 839, 101 C. C. A. 39; In Re Maplecroft Mills (D. C.) 218 Fed. 659, 673; 1 Remington on Bankruptcy (2d Ed.) 152. Moreover, if those placed in full charge of the company's affairs were thus clothed in fact with sufficient power to actually accomplish a legally effective receivership, we cannot think the application therefor was any the less an act of bankruptcy because those responsible therefor had no right, as against the stockholders, to so act. A somewhat contrary holding was had in Re Wm. S. Butler Co. (C. C. A. 1) 207 Fed. 705, 713 [125 C. C. A. 223]. How far that decision may have been affected by the law under which the corporation was organized does not appear."

Also in the case of Exploration Mercantile Co. v. Pacific H. & S. Co., 177 Fed. 825, 101 C. C. A. 39, the Circuit Court of Appeals for the Ninth Circuit decided this question adversely to the contention of appellee. In the meantime in the District Court for the Western District of Arkansas in the case of Doyle-Kidd Dry Goods Co. v. Sadler-Lusk Trading Co., 206 Fed. 813, and in the case of In re Muir, 212 Fed. 495, the question was decided in the same way.

It is strongly insisted by counsel for appellee that the case of In re Wm. S. Butler Co., Inc., 207 Fed. 705, 125 C. C. A. 223, decided by the Circuit Court of Appeals for the First Circuit, is decisive of this question, and that the decision of that court sustains the contention of appellee in the present suit. From a careful reading of that case we find that the principal question decided was whether the term "insolvency," contained in the third clause of section 3, subsec. 4, implies insolvency as defined in section 1 (15) of the act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. 1913, § 9585]), or whether it also relates to the appointment of receivers by a state court owing to insolvency in the commercial sense. It is true that in the Butler Case it was held as a matter of law that an act of bankruptcy or applying for a receiver could be committed only when the application was made in the name of the debtor as plaintiff. The court in that case cited the Exploration Mercantile Company Case, but did not disapprove the same. At any rate we find ourselves more in harmony with the decisions of the court from

which we have just quoted than the rule announced in the Butler Case as respects this point.

While it is true that this court in the case of Maplecroft Mills v. Childs, 226 Fed. 415, 141 C. C. A. 245, quoted with approval from a portion of the Butler Case, nevertheless the question as to the power of the president of a corporation, in a case like the one at bar, by his acts to bind a corporation, was not involved in that case. In the Maplecroft Mills Case there was but a single act of bankruptcy alleged in the petition, which the lower court held had been proven. There the petition did not charge that the Maplecroft Mills, "being insolvent, had applied for a receiver." The record of the state court wherein the receiver had been appointed was the only evidence considered by the court below, an examination of which disclosed the fact that the property of the creditor was not placed in the hands of the receiver "because of insolvency" as defined by the Bankruptcy Act. Thus it will be seen that the questions presented in that case pertained solely to the construction and effect of the evidence considered by the court below, which, as we have stated, consisted of the record in the proceedings had in the state court. This court in that case, under the circumstances, however, deemed it advisable to permit the petitioners to amend their petition, so as to allege insolvency as contemplated by the Bankruptcy Act, if so advised.

It is manifest that Congress, in employing the term "being insolvent, applied for a receiver," intended to reach any and all cases wherein it should appear that a debtor being unable to pay his indebtedness—i. e., insolvent as contemplated by the Bankruptcy Act—should apply for a receiver that such action on his part would constitute an act of bankruptcy. The framers of the act were no doubt concerned more about the doing of the act rather than the method by which it might be accomplished. To hold otherwise would lead to confusion, and permit, in many instances, an evasion of the express purpose of the statute. Such being the case, we are more favorably inclined to the rule announced in the case of James Supply & Hardware Co. v. Dayton Coal & Iron Co., supra, 223 Fed. 991, 139 C. C. A. 367. From what we have said, it follows that the court below had jurisdiction, and was therefore in error in dismissing the petition on this ground.

[4] The appellee also based its motion in the court below upon the following ground:

"That the petition affirmatively shows that more than four months prior to the institution of these proceedings a creditors' suit was instituted in the circuit court of McDowell county, West Virginia, requesting that court to assume jurisdiction over and take in its custody the property of the said Davy-Pocahontas Coal Company and administer the same for the benefit of those entitled, and the petition does not show any impelling reason which would cause this court to supersede the jurisdiction of said state tribunal."

In view of the present state of the record, we do not deem it necessary to enter into an extended discussion of this point, further than to say that, once a bankruptcy court assumes jurisdiction in a case like the one at bar, it necessarily draws unto itself, in the administration of the person's or corporation's affairs, jurisdiction and supreme

control of the estate of such bankrupt; and this is undoubtedly true in this instance, inasmuch as the alleged acts of bankruptcy occurred within four months prior to the filing of the petition. Chief Justice Fuller, in the case of In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, in disposing of the same, among other things, said:

"And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. Necessarily, when like proceedings in the state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in possession of the state courts. Such cases are not cases of adverse possession, or of possession in enforcement of pre-existing liens, or in aid of the bankruptcy proceedings. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit; but that rule can have only a qualified application where winding-up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent. Still it obtains as a rule of comity, and accordingly the receiver of the district court brought his appointment to the knowledge of the Floyd circuit court and requested the delivery of the assets."

This court, in the case of Bank of Andrews v. Gudger, 212 Fed. 49, 128 C. C. A. 505, follows the rule announced in Re Watts, supra; among other things saying that:

"The case, then, comes to this: Does the pendency of a suit in a state court instituted against a corporation by stockholders for the protection of their rights, and the possession of the corporate property by a receiver appointed in such suit, deprive creditors of the corporation of the superior right conferred on them by the federal statute to have the corporate assets brought into the federal court for administration under an adjudication in bankruptcy, when they have duly asserted the right and had the corporation declared bankrupt as soon as it was known to be insolvent and had committed an act of bankruptcy? It seems clear that to this question there can be only a negative answer. An affirmative answer would mean that the stockholders of a corporation or the members of a partnership could at their will deprive creditors of the right conferred upon them by the federal statute to have the property of an insolvent debtor administered by the bankruptcy court. Such a case is entirely apart from those cases in which a creditor has gone into the state court and established or acquired by his suit a legal or equitable lien on the property in the hands of the court four months before the filing of the petition in bankruptcy. In such cases the courts have held that the creditor is entitled to enforce his lien in the first court that acquired jurisdiction. The distinction is also evident between this case and those cases where the state court held the property by its receiver, and there was no question of the subsequent coming into existence of facts giving rise to the right to invoke the exclusive jurisdiction of the federal court."

It is further contended by counsel for appellant that, it appearing that "within four months next preceding the filing of the petition, while insolvent, the Davy-Pocahontas Coal Company, a corporation, committed an act of bankruptcy, in that it did suffer and permit, while insolvent, certain of its creditors to obtain a preference without legal proceedings, and did not, at least five days before sale or final disposition of any property affected by such preferences, vacate or discharge such preferences," the court should have held that these facts

were sufficient to constitute an act of bankruptcy. In view of our disposition of the first assignment of error, as well the seventh ground upon which defendant moved to dismiss the petition in the court below, we do not deem it essential to decide this or the other questions raised, in order to reach a correct determination of the controversy.

For the reasons stated, the judgment of the lower court is reversed.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes