## In re LILLER.

(District Court, N. D. West Virginia. November 21, 1918.)

BANKRUPTCY ☞186(1)—FRAUDULENT TRANSFER OF PROPERTY—SUBROGATION.

A family corporation, organized by a bankrupt when insolvent, to which he transferred his property in an attempt to place it beyond the reach of creditors, and which borrowed money and paid off certain judgment liens on the property, occupies no better position with respect to the property than the bankrupt, and is not entitled to subrogation to such liens.

In the matter of W. A. Liller, bankrupt. On petition of the W. A. Liller Building Company to revise order of referee. Affirmed.

Charles N. Finnell, of Keyser, W. Va., and Horace P. Whitworth, of Western Port, Md., for petitioner.

Harry G. Fisher, of Keyser, W. Va., for trustees.

DAYTON, District Judge. Upon a former hearing in this matter I adjudged the W. A. Liller Building Company to be a colorable holder only for the bankrupt, Liller, and not an "adverse claimant" of his property—this for the reason that this corporation had been formed by Liller, when insolvent, for the purpose of conveying to it his property, with design to hinder, delay, and defraud his creditors; it being admitted that the stock of said corporation was largely subscribed and held by Liller, and nominal shares only by his near relatives. I held the referee rightly, by summary order, directed the trustee to take possession of the property from such corporation and sell it. This ruling of mine was affirmed by the Circuit Court of Appeals (247 Fed. 90, 159 C. C. A. 308), upon the opinion filed by me. In the opinion, among other things, it was said:

"The contention made, that in order to take over this property the corporation went into bank, and borrowed $2,500, and paid off outstanding executions issued upon judgments rendered more than four months before bankruptcy proceedings, whereby this property became exempt, does not strike me as sound under the rulings of New River Coal Land Co. v. Ruffner Bros. (two cases) 165 Fed. 881, 91 C. C. A. 559 (C. C. A. 4th Ct.), and Graham Mfg. Co. v. Davy-Pocahontas Coal Co., 238 Fed. 488, 151 C. C. A. 424 (C. C. A. 4th Ct.), to the effect that the bankruptcy court's jurisdiction is exclusive; and I think they exclude the idea that the bankrupt and a corporation formed by him to purchase the property, as this one was, shall be permitted to determine whether such sale shall stand or not. It is for the bankruptcy court to determine that question, and, where creditors demand a sale of it, I cannot see how it can be well refused. The question as to whether the bank making this loan, or a surety paying it, is entitled to subrogation to the liens of the executions, and entitled to payment out of the proceeds of sale, as I understand, by the referee's decree, is not determined, but reserved, and therefore I make no expression as to that, only determining that, if he should sustain such subrogation, the common creditors are entitled to have the property sold, in order that it may be determined whether it will bring a surplus for their benefit, and in order that the property itself will not suffer dissipation, deterioration, and loss pending the determination of their contest against the right to subrogation in case they determine to contest it."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

When the case went back to the referee, the W. A. Liller Building Company filed its petition, alleging it had borrowed $2,500 of The People's Bank of Keyser, and had with the money so borrowed paid off execution liens existing more than four months before Liller's bankruptcy, and praying subrogation to such liens as against the proceeds arising from the sale of the property.

The referee has held it not entitled to such subrogation, and to revise his ruling and order to this effect the company has filed this petition. Although the bank does not join therein, it is admitted the sum of $2,500 borrowed from it has not been repaid it, and tender is made in its petition by the company that subrogation may be made in the name and favor of the bank.

Subrogation originally was limited to transactions between principals and sureties, and while the modern tendency is to broaden its application, yet it is only applicable in cases wherein a party has been compelled to pay a debt for which another is primarily answerable. It is never allowed one who would thereby reap advantage in any way from his own wrongdoing, nor to relieve a party from the consequences of his own unlawful act. As against creditors of the grantor, a fraudulent grantee stands in the grantor's place, and has no right, by way of subrogation or otherwise, superior to that possessed by his grantor. The doctrine of subrogation is an equitable one, and he who seeks it must come into court with clean hands. McNeil v. Miller, 29 W. Va. 480, 2 S. E. 335; Clevenger v. Miller, 27 Grat. (Va.) 740; Bates v. Swiger, 40 W. Va. 420, 21 S. E. 874; German Bank v. United States, 148 U. S. 573, 13 Sup. Ct. 702, 37 L. Ed. 564; Railroad Co. v. Soutter, 13 Wall. (80 U. S.) 517, 20 L. Ed. 543; In re Mead, 16 Fed. Cas. 1274, No. 9,365.

Applying those principles to the facts in this case, it seems clear the referee rightly denied subrogation. The former adjudication held this corporation to have been formed by Liller in combination with near relatives as nominal stockholders, for the purpose of putting his property out of his hands, but not without his control, in fraud of the rights of his creditors. This former adjudication, affirmed by the appellate court, is conclusive of the fact; and the charge in this petition that a new issue of fact is raised, requiring additional evidence to be heard by the referee, is without merit. This crucial fact having been thus judicially ascertained, it inevitably follows that to allow this corporation to be subrogated to the execution liens paid off by it before Liller was adjudged bankrupt would be, in practical effect, to allow Liller to be reimbursed for debts he was legally and morally bound to pay, and of which the law at the time was compelling payment.

No one would contend that if Liller, in personam, before proceedings in bankruptcy instituted against him, had borrowed the money and paid off these execution liens, he would subsequently, out of his bankrupt assets, be entitled to reimbursement. It inevitably follows that his fraudulent alter ego, the corporation, can be in no better position than he himself could be. This would be true in case the corporation's stock, instead of being practically all owned by him, had been held by

independent parties, provided it had engaged in the scheme to defraud his creditors. When any one, with such unlawful purpose in view, buys the property of a debtor, he does so at his peril. If his fraudulent purpose is exposed, he must lose his money invested in the transaction, or at least be postponed in payment thereof out of the purchased property, until the debts of all other creditors are satisfied. This is the penalty he must pay for his moral turpitude. He cannot with clean hands come into a court of equity, asking either reimbursement or subrogation. Equity, good conscience, and public policy all demand this be so.

But it is insisted that the bank, loaning the money, was entirely innocent of all fraudulent design or purpose, and therefore the rule should not be enforced against it. That it was so innocent is fully conceded. That it is entitled to subrogation, either upon the prayer of Liller, the building corporation, or itself (if it saw fit to make it), is not true—this for the reason that its loan to the corporation was a wholly independent transaction, in no way connected with Liller, his debts, or his property. There was no obligation upon it at the time to either pay or see paid these execution liens. It was neither a purchaser of the property incumbered by them nor even, so far as disclosed, a junior lien holder against it. Its transaction was solely with the corporation, whereby it loaned to it its money with such surety as was satisfactory. It took no lien upon the corporation's property, and no assignment of the execution liens, and because the corporation in fact had no property, but that which it claimed was in fact Liller's, gives it no such connection or right thereto as would supersede the rights of Liller's creditors. As stated heretofore herein, subrogation is only an inherent right to one who has been required to pay a debt for which another is primarily answerable.

Upon argument, the suggestion was made that, inasmuch as the building company was only the "colorable holder" of the property for Liller—in other words, Liller's other self—that the bank would be entitled itself, or any sureties bound for the loan, to prove its debt and have it participate in the distribution of assets as an unsecured creditor. This question has not been presented, or at least has not been passed upon by the referee, and therefore I do not pass upon it. It may depend upon facts not before me, such as whether proof of claim to this end was filed within the time required, and, if not, whether such grounds for not doing so exist that would permit the filing thereof now.

The ruling and order of the referee complained of must be affirmed.