BANK OF DILLON v. MURCHISON et al.

In re E. L. MOORE & CO.

(Circuit Court of Appeals, Fourth Circuit. February 27, 1914. Rehearing Denied.)

No. 1222.

1. CHATTEL MORTGAGES (§ 187*)—PROPERTY WHICH MAY BE SUBJECT OF MORTGAGE—STOCK IN TRADE.

The rule that a mortgage, upon a shifting and perishable stock of merchandise left in the mortgagor's possession, is fraudulent and void per se as against creditors is not upheld in South Carolina, and an insolvent debtor by a bona fide mortgage, intended merely as security for a just debt, may prefer one creditor, but if the mortgage is designed, not as security, but as a transfer of the debtor's property, to the favored creditor, it is void under the assignment law.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 372–392; Dec. Dig. § 187.*]

2. CHATTEL MORTGAGES (§ 201*)—FRAUDULENT CONVEYANCE—QUESTION OF FACT.

Whether a chattel mortgage on a stock of merchandise, left in the mortgagor's possession, is intended as security or as a transfer of the property to the favored creditor in preference to other creditors is a question of fact.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 360; Dec. Dig. § 201.*]

3. BANKRUPTCY (§§ 144, 467*)—CONFLICTING JURISDICTION OF COURTS OF BANKRUPTCY AND STATE COURTS.

Where, after the commencement of an action to enforce a chattel mortgage on a stock of merchandise and the appointment of a receiver and an order of sale, a petition in bankruptcy is filed, it was for the United States District Judge to determine primarily whether the administration of the mortgaged property should be left to the state court or brought into the bankruptcy court, and his discretion would not be reviewed unless clearly abused.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 237, 929; Dec. Dig. §§ 144, 467.*

Conflict of jurisdiction of federal courts with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

4. CORPORATIONS (§ 477*)—MORTGAGES—FORM AND REQUISITES.

A chattel mortgage signed by M. & Co., a corporation, by its president and secretary and treasurer, and which was clearly intended to give the mortgagee a lien upon the corporation's stock of merchandise, was valid, though it did not anywhere disclose in express terms that the mortgagor was a corporation, but, on the contrary, used terms implying that it was a partnership.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1857–1863, 1865–1869; Dec. Dig. § 477.*]

5. CHATTEL MORTGAGES (§ 59*)—EXECUTION—NECESSITY OF SEAL.

At common law, unchanged by any statute of South Carolina, a bill of sale or other conveyance of personal property does not require a seal, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the same rule applies to a "chattel mortgage," which is merely a bill of sale with a defeasance incorporated in it.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 114; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 2, pp. 1098–1106.]

6. CORPORATIONS (§ 425*)—MORTGAGES—ESTOPPEL TO DENY VALIDITY.

Where a chattel mortgage given by a corporation, though not authorized or ratified at a regular meeting or in writing by the directors, was executed by two of them as its president and secretary and treasurer, and a third, making a majority, knew and approved of its execution, and the corporation received and utilized the proceeds of the loan made on the security thereof, it was estopped to deny the validity of the mortgage; and creditors as to whom no fraud was practiced, and who had acquired no lien rights, could not dispute the mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1697–1701, 1705; Dec. Dig. § 425.*]

7. CHATTEL MORTGAGES (§ 90*)—RECORDING OF MORTGAGE AS NOTICE.

Under Civ. Code S. C. 1912, § 1352, requiring the execution of writings, before being recorded, to be proved by the affidavit of a subscribing witness, where a chattel mortgage on a stock of merchandise sufficiently described and located, executed by M. & Co., a corporation, by its president and secretary and treasurer, which nowhere disclosed that M. & Co. was a corporation, was recorded upon the affidavit of the subscribing witness that he saw "M. & Co. sign, seal, and * * * deliver" it, but not stating that he saw the officers sign and deliver it, it was sufficiently probated and properly recorded and valid as to subsequent creditors, as the sole reason for the recording act is to give notice, and the sole necessity for an affidavit to show the verity of the instrument, and the record would have put any one upon inquiry, which, if pursued, would have disclosed the facts.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 168–173; Dec. Dig. § 90.*]

8. CHATTEL MORTGAGES (§ 125*)—SALES—RIGHT TO PROCEEDS.

While a chattel mortgage on a stock of merchandise, together with all accounts then and thereafter accruing from the sale of such merchandise, was not sufficient as an assignment of other accounts and choses of action, where there was no notice to the debtors or delivery of any evidence of debt, the mortgagee was entitled to accounts and choses of action receivable from and on account of sales of the mortgaged stock after the execution of the mortgage, as, the mortgage being a bill of sale with a defeasance, the legal title was in the mortgagee, and the mortgagor, in making sales, was in legal effect the mortgagee's agent.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 210–212; Dec. Dig. § 125.*]

On Cross-Appeals from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

In Bankruptcy. In the matter of E. L. Moore & Co., bankrupts. From an order relative to the disposition of property subject to a chattel mortgage, the Bank of Dillon and William Murchison, trustee in bankruptcy, and others bring cross-appeals. Reversed.

Recorded in the office of the clerk of the court of common pleas of Dillon county, S. C., as of June 10, 1912, is a paper in these words:

"State of South Carolina, County of Dillon.

"$10,000.00.                                    Dillon, S. C., May 27th, 1912.

"On the 1st day of October after date we promise to pay to the order of the Bank of Dillon ten thousand dollars at the office of the said bank with inter-

est and after maturity at the rate of eight per cent. per annum. And in case the said debt is not paid at maturity we promise to pay all expenses incurred in collecting same, including ten per cent. attorneys' fees in case the same is placed in the hands of attorneys, and all costs of any litigation incurred in the collection of said debt, and to secure the payment of the said debt, interest, attorneys' fees and costs aforesaid, we have bargained, sold and released and mortgaged, and do hereby bargain, sell, release and mortgage to the said the Bank of Dillon, all of our entire stock of general merchandise, and fixtures, together with all accessions that may be made to said stock of goods, wares, merchandise and fixtures from time to time, also accounts which here and hereafter accrue from the sale of said stock of goods, wares and merchandise, and all other accounts not heretofore transferred, said property being located in the store of Mamie P. Moore on the west corner of Main and First avenue. And if the said goods and chattels shall in any way be removed from the usual place of same, or deteriorate in value, be abused or mistreated, or the security becomes insufficient, then the said the Bank of Dillon, their heirs and assigns, shall have the right to deem said debt due and payable and seize all or any portion of said goods and chattels, and the same to sell upon giving five days' notice by posting the same in three public places in said county and apply the proceeds of said sale to the payment of said debt, interests and costs, and in that event we promise to deliver said goods and chattels to the said the Bank of Dillon, their heirs and assigns, for the purpose aforesaid, hereby waiving all claims which we might have thereto.

"In witness whereof, we have hereunto subscribed our name and affixed our seal this the 27th day of May, A. D. 1912.

"E. L. Moore & Co. [L. S.]
"By E. L. Moore, Prest., [L. S.]
"By L. H. Cottingham, Sec. & Treas.

"Executed in the presence of
"C. C. Graham.
"Alice Scott.

"State of South Carolina, County of Dillon.

"Personally appeared before me C. C. Graham, and made oath that he saw the within named E. L. Moore & Co., sign, seal and as their act and deed deliver the within written deed, and that he with Alice Scott witnessed the execution thereof. "C. C. Graham.

"Sworn to before me this 27th day of May, 1912.

"Jno. C. Bethea, [L. S.]
C. C. C. P."

On February 5, 1913, the Bank of Dillon filed its complaint in the court of common pleas for the county of Dillon, S. C., against E. L. Moore & Co., corporation, setting forth the execution of the foregoing paper, charging default in its conditions, praying for the appointment of a receiver and an order of sale. Receiver was appointed and sale ordered by this state court, and such sale was advertised. Before made, however, on February 15, 1913, certain creditors filed a petition in involuntary bankruptcy against the E. L. Moore & Co. corporation, and seven days thereafter filed an additional petition praying an injunction inhibiting such sale under the state court proceeding and assailing the validity of this paper as a mortgage. Such injunction was granted after reference had to ascertain the facts, and upon hearing had July 19, 1913, the court below held in effect that, as against the corporation and all its creditors existing at the date of its execution, this instrument was to be upheld and enforced in equity as a valid mortgage, save and except as to accounts receivable referred to therein, but as to all creditors, whose debts accrued subsequent to the date of the execution thereof, to be invalid, null, and void. Thereupon the Bank of Dillon and the creditors have taken their appeal and cross-appeal, respectively, from this ruling.

W. H. Muller, of Dillon, S. C., and P. A. Willcox, of Florence, S. C. (Gibson & Muller, of Dillon, S. C., and Willcox & Willcox and Henry E. Davis, all of Florence, S. C., on the brief), for appellant and cross-appellee.

Louis M. Swink, of Winston-Salem, N. C., and Robert H. Talley, of Richmond, Va. (Mitchell & Smith, of Charleston, S. C., and Townsend, Rogers & McLaurin, of Bennettsville, S. C., on the brief), for appellees and cross-appellants.

Before PRITCHARD and KNAPP, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge (after stating the facts as above). [1, 2] It is to be noted, incidentally, that the rule, maintained in many of the states, that a mortgage or deed of trust upon a shifting and perishable stock of merchandise left in the possession of the mortgagor is fraudulent and void per se as against creditors is not upheld in South Carolina. On the contrary, the rules there are settled by its Supreme Court, in Porter v. Stricker, 44 S. C. 183, 21 S. E. 635, approved in Marshall v. Crawford, 45 S. C. 189, 22 S. E. 792, to be: (1) An insolvent debtor may, by a bona fide mortgage, which is intended merely as a security for a just debt, prefer one of his creditors. (2) If the mortgage is really designed to operate not as a security merely, but as a means of transferring the debtor's property to the favored creditor, in preference of the other creditors, then it is void under the assignment law. (3) The question as to what was the intention is a question of fact.

Therefore this case, being a South Carolina one, must be governed, in its decision, by these rules; and such cases as Ritchie County Bank v. McFarland, 183 Fed. 715, 106 C. C. A. 153, are not applicable. In this connection it is sufficient to say that the lower court has stated that:

"There is no testimony whatsoever that there was any actual fraud about the transaction. The deed was made more than four months before the adjudication in bankruptcy, and, if a good mortgage, is not invalid as a preference. The bank appears to have given value for it as a mortgage and relied upon it as such."

These statements have not been and cannot be controverted.

[3] We are not greatly impressed with the argument made by counsel for the bank that comity required the court below to refrain from taking charge of and administering the res, instead of leaving the same to be administered by the state court.

The bankrupt law is supreme and its practical and plenary administration is more and more demonstrating the fact that it must, to a very great extent, be exclusive. This, among other reasons, because the insolvent laws of so many of the states are in conflict with the bankrupt act as to the method and order of distribution; because distribution by state courts curtail creditors' rights as to hearings, selection of administering trustees, and other details, secured to them by the bankrupt act; and because of costs, delays, and confusion arising from a dual administration.

The bankrupt law being supreme, and the District Judge of the United States being constituted the especial judicial expounder of it, the responsibility is primarily upon him to determine, in each case, whether its administration shall be shared with another. His discre-

tion in the premises will be rarely reviewed unless abuse of it is clearly shown. New River Coal Land Co. v. Ruffner Bros., 165 Fed. 881, 91 C. C. A. 559; Va. Iron, Coal & Coke Co. v. Olcott, 197 Fed. 730, 117 C. C. A. 124.

The determination of this case, therefore, resolves itself into answers to three questions: (1) Is this paper writing in form and fact the chattel mortgage of the bankrupt corporation? (2) If so, was it legally admitted to record? (3) Is its terms sufficient to pass, by way of assignment, to the bank, its accounts receivable? The validity of this paper as a mortgage is assailed upon two grounds: First, because there is nothing on its face to indicate that it was executed by, or on behalf of, a corporation and lacks a corporate seal; and, second, its execution was not legally authorized by its directors.

[4, 5] We are in accord with every statement made by the learned judge sitting upon the hearing below to the effect that this instrument is most slovenly and carelessly drawn. It is a conspicuous illustration of the fact that when one, in order to save expense, secures an untrained hand to draw such papers he finds, ultimately, that he has been "penny wise and pound foolish." Nevertheless, so many are so drawn in the conduct of human affairs that, since the time of Sir Mathew Hale at least, courts have been astute to find means to make them effectual according to the honest intent of the parties. There can be no question as to the honest intent of the parties here. The officers of this corporation clearly intended by this writing to give this bank a lien upon this stock of merchandise. The bank just as clearly intended it should give it and in good faith accepted this paper as a chattel mortgage to secure its money. It is true that no words in the paper discloses, in express terms, that E. L. Moore & Co., was a corporation. It is rightly said that its terms imply that it was a partnership. Nevertheless it is an undisputed fact that it was a corporation, that its name was signed to it by its officers, who were in fact such officers, by whom, under all ordinary circumstances, such papers, on its behalf, would have to be executed. As to whether the seal of the corporation was attached to it is a disputed question. The bank insists that it was affixed to the original paper, and that, in recording it, the clerk so indicated by attaching the letters in brackets [L. S.] instead of the form and reading of the seal itself. We will not undertake the determination of this question of fact, for the reason that we deem it immaterial to do so. At common law no seal to a bill of sale or other conveyance of personal property was required. And nothing contained in the statute law of South Carolina, pertinent to the question (volume 1, Code 1912, §§ 4103–4112), makes a seal necessary, and therefore the common-law rule becomes effective. As said in Gibson v. Warden, 14 Wall. 244, 20 L. Ed. 797:

"The term 'mortgage,' used in the statutes, does not import or imply that a seal is necessary. In regard to chattels, it is a mortgage, and not a deed of mortgage, that is required. The distinction between real and personal property and between the means which are necessary to affect them is well settled. Personal property, according to the common law, could always be transferred or incumbered without the use of a deed for that purpose. A seal has never been held necessary to the validity of a bill of sale. A chattel

mortgage is only a bill of sale with a defeasance incorporated in it. The presence or absence of that formality is wholly immaterial."

[6] We therefore conclude that it is our duty to uphold this instrument as a chattel mortgage, sufficient in form and execution by the corporation. As to whether it was so legally authorized as to be valid as against the corporation and its creditors, it is insisted by the bank that, while no such authority was given by resolution passed by the directors in a regularly called meeting, it was subsequently ratified by the individual directors. It is apparent that this corporation, while one in name, was conducted in effect as a partnership. It had four directors, two of whom were the officers executing this paper. A third testified in effect to his knowledge and approval of its execution. A majority only was required to make such authorization. Because it was not authorized or ratified in regular meeting or in writing by the directors, the learned judge below held that there was no sufficient evidence of any legal ratification, but in that connection rightly reasoned thus:

"It does appear from the testimony that both parties to the transaction acted upon the assumption that the deed was a good mortgage. The mortgagor, E. L. Moore & Co., received and utilized the proceeds of the loan made on the paper as a mortgage. The Bank of Dillon, relying upon the security, made the loan. It would be impossible now to restore the parties to the positions held when the deed was executed. The corporation of E. L. Moore & Co., having enjoyed all the benefits of the transaction, would not be permitted in equity to recede therefrom at this date because of irregularities and insufficiencies in the deed. As equity would now require the E. L. Moore & Co. to cure the defects of the deed, so it will hold that company stopped as against the Bank of Dillon to deny the instrument to be a mortgage.

"Such being the case, no outside creditor existing when the mortgage was given would have any greater rights than the corporation under the circumstances of this particular case. No fraud is shown to have been practiced upon such creditors and none of them are shown to have acquired any lien rights upon the mortgaged property which would entitle them to dispute the mortgage when neither the corporation nor its stockholders can now do so."

In this conclusion we fully concur, but because the learned court below was further of opinion that this instrument "was not sufficiently and definitely phrased and framed, even if properly probated and recorded, to notify subsequent creditors that there was a prior mortgage made by the corporation styled E. L. Moore & Co.," and because the probate of it was not "sufficient to admit it to record so as, when recorded, to constitute constructive notice to such creditors," he held it to be null and void as to such subsequent creditors.

[7] As to whether the instrument was "sufficiently and definitely phrased and framed" to constitute it a chattel mortgage of this corporation, we have already set forth our dissent to his conclusion that it was not. This brings us to the consideration of the question as to the sufficiency of its probate.

The law of South Carolina (volume 1, § 1352, Code 1912), provides that:

"Before any deed or other instrument in writing can be recorded in this state, the execution thereof shall be first proved by the affidavit of a subscribing witness to said instrument, taken before some officer within this state competent to administer an oath."

It is admitted that Graham was a subscribing witness and that his affidavit was taken by the clerk of the court competent to administer an oath. The court below says:

"The usual affidavit to prove the execution by a corporation is an affidavit of a witness that he saw the corporate officers, whoever they were, sign and affix the corporate seal and as the act and deed of the corporation deliver the instrument."

This manifestly, as to a mortgage of real estate, a sealed deed, is true, but, as we have seen, a chattel mortgage need not be a sealed instrument; therefore this probate, it must be conceded, did not require proof of sealing and would have undoubtedly been sufficient if it had set forth that he saw the officers sign the instrument. He does say that "he saw the within E. L. Moore & Co. sign, seal and as their act and deed deliver the within written deed." Inasmuch as he could only see the officers sign, and the corporation could only sign by and through such officers, is not the position taken too technical? We think so. The sole necessity for any affidavit by a witness is to show the verity of the instrument to the recording tribunal, so that it and the public might not be imposed upon by the recordation of a false or fraudulent instrument. The sole reason for the recording acts is to give notice to the public of such instrument. Could any one, turning to the record of this one in controversy, fail to be put upon notice that E. L. Moore & Co. had given a chattel mortgage on its stock of goods fully described and located, signed by its president and secretary and treasurer, and that Graham had sworn to its verity of execution? We think not. Finally, with such knowledge conveyed to him by this record, was it material that he might have taken E. L. Moore & Co. to be a partnership instead of a corporation? We think not, for such inquiry would disclose that E. L. Moore & Co. was the mortgagor, the Bank of Dillon the mortgagee, and the stock of goods described and located was the res mortgaged. In this position we feel ourselves fully sustained by Kelly v. Calhoun, 95 U. S. 710, 24 L. Ed. 544, and the many authorities cited in Cyc. and the text-writers. We conclude, therefore, that this instrument was sufficiently probated and properly recorded, and that the court below erred in holding it null and void as to subsequent creditors.

[8] In conclusion, did the court below err in holding this instrument to be too indefinite to constitute an assignment of the accounts receivable of the bankrupt corporation? His opinion was that:

"As against creditors of any class, choses in action, such as accounts receivable, cannot be transferred by general loose language of the character used in this instrument without any notice to the account debtor or delivery of any evidence of debt."

At least two things are to be borne in mind in this connection: First, that it is admitted that the stock of goods mortgaged is sufficiently described and located in this chattel mortgage; and, second, as said in Gibson v. Warden, 14 Wall. 244, 20 L. Ed. 797:

"A chattel mortgage is only a bill of sale with a defeasance incorporated in it. The presence or absence of that formality is wholly immaterial."

This being true, as to general accounts or choses in action not receivable from and on account of sales made of this stock of goods

after the execution of this mortgage, the ruling of the court below is right, but as to such accounts receivable, by reason of sales made of this mortgaged stock, such ruling is erroneous; this for the reason that, in legal effect the bank having title to the goods, the mortgagor, in like legal effect, became only the agent of the bank in making any sales thereof.

It follows that the decree of the court below must be reversed. Reversed.