STATE OF MISSOURI et al. v. ANGLE.

In re SAGE.

(Circuit Court of Appeals, Eighth Circuit. October 4, 1916.)

No. 166.

1. BANKRUPTCY ☞440—REVIEW—PETITION TO REVISE.
	An order directing a receiver appointed by the state court to deliver the bankrupt's property to the trustee in bankruptcy may be reviewed by petition to revise.
	[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ☞440.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKS AND BANKING ☞94—REGULATION—PRIVATE BANKERS—"CORPORA-
TION."

Rev. St. Mo. 1909, § 1116, defines private bankers as those who carry on
the business of banking by receiving money on deposit with or without
interest, by buying and selling bills of exchange, promissory notes, gold
or silver coin, bullion, uncurrent money, bonds or stocks, or other se-
curities, and of loaning money without being incorporated. Section 1117
provides for the creation of individual or private banks and forbids any
person or company from engaging in the business of private banking with-
out complying with its provisions. Sections 1118 and 1119 place the busi-
ness of a private bank in the same situation as that of an ordinary in-
corporated bank, and provide that the general banking laws shall apply
to private bankers, while section 1081 provides for the examination of
banks, including private banks, and for the closing of such banks by the
bank commissioner. Sections 1087, 1088, 1095, respectively limit the power
of private bankers to make loans to the owners or partners, for the ex-
amination of such institutions, and the granting of certificates entitling
them to do business. Const. Mo. art. 10, § 21, declares that no corporation,
company, or association other than those formed for benevolent, religious,
or scientific purposes shall be created unless the persons named as corpora-
tions pay a fee; and article 12, § 11, declares that the term "corporation"
shall include stock companies or associations having powers or privileges
not possessed by individuals or partnerships. *Held* that, though the busi-
ness of private bankers is regulated, and individuals cannot engage therein
without complying with the statutes, a private bank or banker is not a
corporation or quasi corporation whose entity is distinct from that of the
owner, and the assets of the bank belong to the owner.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 227;
Dec. Dig. ☞94.

For other definitions, see Words and Phrases, First and Second Series,
Corporation.]

3. COURTS ☞366(1)—PRECEDENTS—FEDERAL COURTS.

Ordinarily a federal court accepts a construction of the statutes of a
state by the highest court thereof, but if such decision is rendered after
rights have accrued or liabilities have been incurred, which are the sub-
ject of determination by the federal court, the latter court is not bound
by such decision, although it will lean to agreement with the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967; Dec.
Dig. ☞366(1).]

4. COURTS ☞366(1)—PRECEDENTS—DECISION—"CORPORATION."

A decision by the Supreme Court of Missouri that under the local laws
the business of a private banker, who is given the powers of a corpora-
tion, is distinct from the business enterprises of the owner, and that cred-
itors of the bank have priority over individual creditors, is not an adjudi-
cation that the private bank or banker is a corporation, or quasi corpora-
tion, and a distinct legal entity from the owner.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967;
Dec. Dig. ☞366(1).]

5. BANKRUPTCY ☞20(1)—FILING OF PETITION—ADJUDICATION—EFFECT.

The filing of a petition in bankruptcy and the adjudication in a court of
bankruptcy brings the property of a bankrupt, wherever situated, into
custodia legis; and as one of the purposes of the Bankruptcy Act is to
place in the hands of one court the full administration of the bankrupt's
assets, the bankruptcy court has jurisdiction over that property of the
bankrupt used by him in his capacity as a private banker, though under
the state laws creditors of the private banker as such had priority in the
assets devoted to that business.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞20(1); Courts,
Cent. Dig. § 1331.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. BANKRUPTCY ⬡➡20(1).—JURISDICTION OVER PROPERTY—AUTHORITY OF COURT.
   That the agents of a state bank examiner took possession of the assets of a private bank does not confer jurisdiction on the state court, as against a court of bankruptcy in which a petition in bankruptcy against the owner was filed, prior to the application in the state court for a .receiver to take over his property.
   [Ed. Note.—For other 'cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ⬡➡20(1); Courts, Cent. Dig. § 1131.]

7. RECEIVERS ⬡➡199—ADMINISTRATION OF ASSETS—AUTHORITY OF STATE COURT TO ALLOW COMPENSATION.
   Where a state court was without authority to administer any of the assets of a bankrupt, it has no authority to allow its receiver compensation for performing part of that labor.
   [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 391; Dec. Dig. ⬡➡199.]

8. BANKRUPTCY ⬡➡317—COMPENSATION OF OFFICERS—RECEIVER OF STATE COURT.
   Where a receiver appointed by the state court, which was without jurisdiction to administer the property of a bankrupt, performed valuable services in conserving the property, he may, on petition to the bankruptcy court be allowed compensation.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 493–495; Dec. Dig. ⬡➡317.]

Petition to Revise Order of the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

In the matter of the bankruptcy of David H. Sage. On petition of Johnson B. Angle, as trustee in bankruptcy, McDermott Turner, receiver, appointed by the state of Missouri, was directed to deliver property of the bankrupt in his possession (224 Fed. 525), and he appeals and petitions to revise. Affirmed.

James P. Gilmore, of Tulsa, Okl., and W. T. Rutherford, Asst. Atty. Gen. (John T. Barker, Atty. Gen., T. L. Montgomery, of Kahota, Mo., and W. M. Fitch, Asst. Atty. Gen., on the brief), for petitioners.

J. O. Boyd, of Keokuk, Iowa (Boyd & McKinley, of Keokuk, Iowa, on the brief), for respondent.

Before HOOK and CARLAND, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. [1] By an appeal, and also by a petition to revise (the latter being the proper procedure—In re Hecox, 164 Fed. 823, 90 C. C. A. 627), there is called in question a decision of the District Court of the Eastern District of Missouri, which directed a receiver appointed by a state court of Missouri to turn over certain property in his possession, to a trustee in bankruptcy. The bankrupt, David H. Sage, had been engaged in mercantile business at Keokuk, Iowa, and also in Missouri. On November 19, 1914, there was filed in the United States court at Keokuk, Iowa, a creditors' petition asking that Sage be declared a bankrupt, and he was so adjudged on November 27, 1914, and the respondent was chosen as trustee. Prior to 1911 the bankrupt, David H. Sage, and William N. Sage, had associated themselves together, furnished the capital, and established a bank at Alexandria, Mo. It is stipulated that on or about January 10, 1911,

D. H. Sage became the sole owner of the bank, having purchased the interest of his associate, by proceedings had under sections 1116 and 1117 of the Revised Statutes of Missouri of 1909, and signing a certificate as follows:

### "Form for Establishing a Private Bank.

"Be it known that the undersigned D. H. Sage have associated themselves together for the purpose of establishing a bank under the provisions of sections 1116 and 1117; Revised Statutes of Missouri, 1909.

"1. The names and places of residence of all persons interested in the business are (who shall be residents of Missouri):

| Names. | Residence. |
|---|---|
| D. H. Sage, | Alexandria, Mo. |

"2. The amount of capital invested is $10,000.00.

"3. The name in which the business is to be conducted is Sage Banking Company.

"4. The business is to be conducted at Alexandria, Mo., county of Clark, in the state of Missouri.

"In witness whereof we hereunto set our hands this 31st day of December, A. D. 1910. D. H. Sage."

This certificate was verified and acknowledged by David H. Sage and filed with the recorder of deeds. The bank commissioner of Missouri then issued a certificate establishing the bank and authorizing it to do business as a bank of deposit and discount. The bank continued in business, making reports and being examined as provided by statute, until October 15, 1914. On that date Sage notified the bank commissioner of Missouri that the bank had closed its doors and requested the bank commissioner to take charge of its affairs, and on the same day he posted on the bank's doors a notice that it was in the hands of the bank commissioner.

On October 16, 1914, a bank examiner acting under the direction of the state bank commissioner, took charge of the bank, and instituted an examination of its affairs. On the following day, the bank commissioner appointed McDermott Turner as special agent to take charge of the bank, pending the appointment of a receiver. On November 21, 1914, the Attorney General of Missouri applied to the state court for the appointment of a receiver for the bank. McDermott Turner was appointed as such receiver, qualified, and at once took possession of the bank and its assets. The bank had a large amount of deposits and its assets had a face value in excess of the amount owing to depositors.

On February 3, 1915, the trustee made the application heretofore mentioned, requesting the United States Court for the Eastern District of Missouri to direct the receiver to surrender to the trustee in bankruptcy the property of the Sage Banking Company. The court denied the request without prejudice to a new application, and with leave to renew it after making an application to the state court for a similar order against the receiver. On May 8, 1915, the state circuit court, in compliance with the trustee's application, made an order directing the receiver to surrender possession of the assets, after deducting a sum it allowed as compensation to the receiver and his attorney. An appeal was taken to the Supreme Court of Missouri and a supersedeas bond was given. After the decision by the state circuit court, and before the case was heard on appeal by the Missouri Supreme Court, the

trustee, on May 24, 1915, renewed his application to the United States District Court for the Eastern District of Missouri, for an order directing the receiver to surrender the assets. Answers were filed to this application, and the issues were submitted to the court upon these pleadings and upon an agreed statement of facts. The court, on August 16, 1915, made an order that the receiver surrender to the trustee all assets in his possession or control belonging to the estate of David H. Sage, doing business as the Sage Banking Company, and it is of this order that complaint is now made.

[2] The principal question presented in the case is whether David H. Sage owned the property that was held by the receiver appointed by the state court. If that property did not belong to David H. Sage, the bankruptcy court was not entitled to administer it. The question of ownership involves a consideration of certain portions of the Constitution and statutes of Missouri. Section 11, art. 12, of the Constitution of 1875 provides:

"The term 'corporation,' as used in this article, shall be construed to include all joint-stock companies or associations having any powers or privileges not possessed by individuals or partnerships."

Section 21, art. 10, of that Constitution provides:

"No corporation, company or association, other than those formed for benevolent, religious, or scientific * * * purposes shall be created or organized under the laws of this state, unless the persons named as corporators shall, at or before the filing of the articles of association or incorporation, pay into the state treasury fifty ($50.00) dollars for the first fifty thousand ($50,000.00) dollars or less of capital stock."

Portions of the statutes of Missouri (1909 Revision) are as follows:

Section 1116. *Private Bankers Defined.*—Private bankers are declared to be those who carry on the business of banking by receiving money on deposit, with or without interest, by buying and selling bills of exchange, promissory notes, gold or silver coin, bullion, uncurrent money, bonds or stocks, or other securities, and of loaning money, without being incorporated.

Section 1117. *Requirements for Private Banker—Change of Ownership.* No person or company of persons shall engage in the business of banking as private bankers without a paid-up capital of not less than ten thousand dollars, and if said banking business is to be carried on in a city having a population of one hundred and fifty thousand inhabitants or more, then without a paid-up capital of not less than one hundred thousand dollars, nor until he or they shall have made a statement, subscribed and sworn to as correct and true before a notary public by each person connected with such business as owner or partner, setting forth: First, the names and places of residence of all persons interested in the business, all of whom shall be residents of this state, and the amount of capital invested; and second, the name in which the business is to be conducted and the place at which it is to be carried on; which statement shall be acknowledged, recorded in the office of the recorder of deeds of the county in which the bank is to be located, and a certified copy of such recorded instrument shall be filed in the office of the bank commissioner: Provided, however, that in order to accomplish a change in the ownership of a private bank, it shall be necessary for all the partners of the new bank to make, record and file in the office of the bank commissioner a statement in form and manner required by this section for establishing a new bank.

Section 1118. No private banker, who receives general deposits after the manner of banks of deposit and discount, shall employ any part of his capital, or any funds deposited with or borrowed by him, in dealing or trading in, buying or selling lands, goods, chattels, wares or merchandise, but he may sell and dispose of all kinds of property which may necessarily come into his pos-

session in the collection of his loans or discounts. Nor shall any such banker use or employ his capital or funds deposited with or borrowed by him in any other manner than banks of deposit and discount are by this article permitted, or loan a greater amount to any person or loan any sum whatever, except upon like security as is required to be taken by banks of deposit and discount. Neither shall the profits of such private bank be distributed to the owners thereof without first setting apart to surplus account at least twenty per cent. of the net profits each year until the surplus equals twenty per cent. of the capital, and said surplus shall not be diminished except for the payment of any losses which may occur: Provided, if there are undivided profits, these shall first be used in payment of such losses.

Section 1119. All the provisions of this article shall, so far as the same are applicable, apply to all private bankers doing business in this state.

Section 1081. If, from an examination made by the bank commissioner, or by one of his examiners, it shall be discovered that any bank, private banker, savings and safe deposit company or trust company is insolvent, or that its continuance in business will seriously jeopardize the safety of its depositors or other indebtedness, and if the action is taken from an examination by an examiner and such examiner shall recommend the closing of the bank, then it shall be the duty of the bank commissioner, if he approve of such recommendation, by himself or one of his examiners, immediately to close said bank, private bank, savings and safe deposit company or trust company, and to take charge of all the property and effects thereof. Upon taking charge of any bank, private bank, savings and safe deposit company or trust company the bank commissioner shall, as soon as practicable, ascertain, by a thorough examination into its affairs, its actual financial condition, and whenever he shall become satisfied that any such bank, private banker, savings and safe deposit company or trust company cannot resume business or liquidate its indebtedness to the satisfaction of all its creditors, he shall report the fact of its insolvency to the Attorney General, who shall immediately upon the receipt of such notice, institute proper proceedings in the proper court for the purpose of having a receiver appointed to take charge of such bank, private bank, savings and safe deposit company or trust company, and to wind up the affairs thereof, and business thereof, for the benefit of its depositors, creditors and stockholders; and it is made the duty of the court, or the judge thereof in vacation, summarily to appoint said receiver to take possession of the property and assets of said bank, private banker, savings and safe deposit company or trust company, for the purpose of winding up the business thereof; any complaints or opposition of the bank, the private banker, savings and safe deposit company or trust company or its officers subsequently to be heard in open court. The bank commissioner may appoint a special agent to take charge of the affairs of an insolvent bank, private banker, savings and safe deposit company or trust company temporarily, until a receiver is appointed; such agent to qualify, give bond and receive compensation the same as a regularly appointed examiner of the department of banking; such compensation to be paid by such bank, private banker, savings and safe deposit company or trust company, or allowed by the court, as costs in case of the appointment of a receiver: Provided, that in no case shall any bank, private banker, savings and safe deposit company or trust company continue in charge of such special agent for a longer period than sixty days. Any bank, private banker, savings and safe deposit company or trust company receiving deposits and doing business in this state under the laws cited in this chapter, may place its affairs and assets under the control of the bank commissioner by posting a notice on its front door as follows: "This bank [or trust company] is in the hands of the bank commissioner." The posting of this notice or of a notice by the bank commissioner that he has taken possession of any bank, private bank, savings and safe deposit company or trust company, shall be sufficent to place all its assets and property, of whatever nature, in the possession of the bank commissioner, and shall operate as a bar to any attachment proceedings whatever.

Section 1087. No private bank or banker in this state shall make any loan or discount on account of the personal security or obligation of the proprietor, owner or partner in such private bank in excess of ten per cent. of the paid-up capital and surplus of such private bank or banker. For any violation

of the provisions of this section, the bank commissioner shall have authority, in his discretion, to make application for the appointment of a receiver for such private bank or banker, as now provided by law in case of insolvent banks and trust companies.

Section 1088. Provided, however, that should any such corporation or private bank or banker not have any owners or directors, other than the officers thereof, that then, in such event, said examination and report may be made by such officers, and it is hereby made their duty so to do, under the same penalties as above provided.

Section 1095. In case the bank commissioner shall find that all the provisions of the law have been complied with by the institutions herein named, which desire * * * to do business, he shall grant them a certificate to that effect. Such certificate, or certified copies thereof, shall be taken in all the courts of this state as evidence of such incorporation.

The petitioners contend that under these provisions, the Sage Banking Company was either a corporate body, or a separate legal entity from the natural person of David H. Sage, while the respondent asserts that these provisions look only to the exercise of visitorial powers of the state, and did not create an ownership of the assets of the Sage Banking Company apart from that of David H. Sage. Viewing these provisions of the Constitution and statutes of Missouri as a whole, it does not appear that a corporation is created by the fact that one or more persons engage in the banking business and comply with these statutory requirements, by filing a certificate and submitting to the inspection of the state bank commissioner. Not only do the statutes constantly recognize, permit, and regulate the conduct of the banking business by private bankers as distinguished from incorporated banks, but they also refer to the individuals who so engage in that business as the "owners" and as "partners" and to the capital invested as "his capital." Private bankers are defined as those who carry on the business of banking "without being incorporated." An essential element of corporate existence is absent, as no provision is made for succession by transfer of capital stock, nor even for the existence of capital stock. Instead, section 1117, referring to a change of ownership in such a bank, states that:

"It shall be necessary for all the partners of the new bank to make, record and file in the office of the bank commissioner a statement in form and manner required by this section for establishing a new bank."

The portions of the statutes relating to the visitorial powers of the state, such as the making of reports and submission to examination, and the restriction of the right to employ more than a specified portion of the assets in the form of a loan to one of the proprietors, are consonant with a legislative purpose to restrict an individual owner in the conduct of a business of recognized peril. A similar conclusion was reached in the case of Gupton v. Carr, 147 Mo. App. 105, 125 S. W. 849, and seems to have been implied in the decision in Union Bank v. Oxford & C. L. R. Co., 143 Fed. 195, 74 C. C. A. 323, as well as in those of State v. Salmon, 216 Mo. 466, 115 S. W. 1106, and Blake v. Third Nat. Bank, 219 Mo. 644, 118 S. W. 641. It is impossible to accept the contention that these legislative acts have created a new legal entity, having an existence apart from the individuality of the bankers, and not a corporation, nor partnership, nor any hereto-

fore recognized legal body. Such an extraordinary creature needs more definite delineation than these statutes disclose.

[3, 4] In support of the claims of petitioners, there is cited the decision by the Supreme Court of Missouri, State v. Sage, 184 S. W. 984, in determining the appeal of the receiver of the Sage Banking Company from the order of the state circuit court which directed him to surrender the assets to the trustee in bankruptcy. This decision was filed on February 25, 1916, and holds, in effect, that the Sage Banking Company was a separate entity, whose assets should be administered apart from those of David H. Sage. Ordinarily a court of the United States accepts a construction of the statutes of the state by the highest court thereof, but if such decision is rendered after rights had accrued or liabilities have been incurred, which are the subject of determination by a court of the United States, the latter court is not bound by such decision of the state court, but exercises its independent judgment, although it will lean toward an agreement with the state court. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517; Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Moore-Mansfield Co. v. Electrical Co., 234 U. S. 619, 34 Sup. Ct. 941, 58 L. Ed. 1503; Louisville Trust Co. v. City of Cincinnati, 76 Fed. 296, 22 C. C. A. 334; Jones v. Great Southern Fireproof Hotel Co., 86 Fed. 370, 30 C. C. A. 108; Hager v. American Nat. Bank, 159 Fed. 396, 86 C. C. A. 334; Adelbert College of W. R. University v. Wabash R. Co., 171 Fed. 805, 96 C. C. A. 465, 17 Ann. Cas. 1204.

It is to be observed that, by the interpretation placed on these statutes by the Supreme Court of Missouri, section 1117 forbids persons engaging in the banking business until they have complied with its terms, such as possessing a certain paid-up capital, and having filed a sworn preliminary statement and that, on compliance with that section, they become private bankers as defined in section 1116. As such private bankers they possess powers and privileges not possessed by other individuals or partnerships, and at one place in the opinion this is said to constitute such private bankers a corporation under section II, art. 12, of the Constitution, which reads:

"The term 'corporation,' as used in this article, shall be construed to include all joint-stock companies or associations having any powers or privileges not possessed by individuals or partnerships."

This statement that such private bankers are thus constituted a corporation is modified in the following portion of the opinion, and it is said that the effect of these statutes was—

"to completely segregate the private banking business of the state from the solidarity of the owner's general business and make each rest upon its own bottom, and thereby make a private bank a separate and distinct entity from the general business of the owner and subject the assets thereof, first, to the payment of the bank's creditors, and, second, if thereafter any remains, they might go under the general laws to the payment of the general creditors, and yet not to disturb the ownership of the bank or its management or control by the owners, as provided by law. Such an entity, as before suggested, might more properly be designated as a quasi corporation when owned by more than one person, and a quasi corporation sole, when owned by but one person,

with their rights, powers, duties, and obligations conferred and defined by statute. This is the clear common-sense reading of the statutes, and they fully remedy the evils which led to their enactments."

And again it is said:

"There are other provisions of the statutes lending strength to the views herein expressed; but in my opinion those considered clearly establish the fact that all private banks in this state are separate entities from all other business enterprises of the owners or proprietors thereof, and therefore no good would flow from a further consideration of those statutes. I am therefore clearly of the opinion that the assets of the Sage Banking Company belong to that institution, and for that reason its creditors have a priority of right to them over the rights of the creditors of D. H. Sage, and that they should be, first, applied in payment of their claims, and, second, if any remains thereafter, then in payment of his individual creditors as provided by law."

[5, 6] Considering the opinion as a whole, this decision by the Supreme Court of Missouri did not declare a bank, such as that here in question, to be a corporation, but to be a separate "business enterprise of the owners" of the bank, and as such governed by certain statutes of Missouri which give a priority to creditors of the bank over other individual creditors of David H. Sage. There is no occasion to differ from the decision of that court as to this theory of its banking laws; but the conclusion does not follow that the trustee in bankruptcy was not entitled to the possession of the property which the receiver had held, nor is that conclusion a construction placed upon the laws of Missouri.

The effect of the filing of the petition and the adjudication in the bankruptcy court of Iowa was to bring the property of the bankrupt, wherever situated, into custodia legis, and it was thus held from the date of filing the petition; so that subsequent proceedings could not be had in other courts to reach the property; the court of original jurisdiction having acquired the full right to administer the estate under the bankruptcy law. Lazarus v. Prentice, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Acme Harvester Co. v. Beekman Lum. Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; In re Hecox, 164 Fed. 823, 90 C. C. A. 627.

One of the prime purposes of the Bankruptcy Act was to place in the hands of one court, and that the bankruptcy court of original jurisdiction, the full administration of the bankrupt's assets. United States Fidelity Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055. Liens or priorities, if any exist, by reason of the laws of Missouri, of creditors who dealt with the Sage Banking Company, are a matter for the determination of the court of bankruptcy, which must distribute the estate.

The question here involved is not to whom these assets shall be distributed, but what court shall decide that question. As it is held that David H. Sage was the owner of the property possessed by the Sage Banking Company, it follows that the administration of those assets belongs to the court of bankruptcy. It is claimed that the possession of the bank examiner, of the agent of the bank commissioner, and then of the receiver was such as to place these assets in the custody of the circuit court of Missouri, and that its prior seizure of this property en-

titled it to continue to final administration. There are several answers to this contention. The possession by the examiner and by the special agent of the bank examiner were acts of administrative officers and not of judicial executives. The application to the state court of Missouri for the appointment of a receiver was not made until November 21, 1914, two days after the petition in bankruptcy was filed against David H. Sage in the United States court at Keokuk, Iowa, and after the exclusive jurisdiction of the bankruptcy court had attached.

[7, 8] A final contention is made that the court should not have ordered the surrender of all the assets which came into the hands of the receiver, but should have recognized the deduction of the compensation of the receiver and of his attorney, as made by the state court. As the state court was without authority to administer any portion of the assets of David H. Sage, it must be without power to award compensation to its officer for performing part of that labor. So far as those services were of value to the estate, in preserving and collecting it, an application to the court of bankruptcy will afford an avenue of relief. Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165.

No error is found in the order of the District Court, and it is approved and confirmed.