In re GRAFTON GAS & ELECTRIC LIGHT CO. In re GRAFTON TRACTION CO. In re GRAFTON LIGHT & POWER CO.

(District Court, N. D. West Virginia. November 16, 1918.)

No. 594.

1. BANKRUPTCY ⊚⇒43—VOLUNTARY BANKRUPTS—ELECTRIC COMPANIES.

A corporation operating a plant to generate and sell electricity is not within the exception to Bankruptcy Act, § 4a (Comp. St. 1916, § 9588), declaring any person, excepting certain corporations, entitled to the benefits of the act as a voluntary bankrupt.

2. BANKRUPTCY ⊚⇒43—VOLUNTARY BANKRUPTS—STREET RAILWAYS—"RAILROAD."

Ordinarily at least an electric street railway is not a "railroad," within Bankruptcy Act, § 4a (Comp. St. 1916, § 9588), excepting railroad corporations from those which may become voluntary bankrupts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Railroad.]

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. BANKRUPTCY ☞217½ —STAYING SUITS IN STATE COURTS.**

Order in bankruptcy court, staying creditors from prosecuting their suits in state courts against bankrupt to ascertain and enforce liens on bankrupt's property, are authorized by Bankruptcy Act, § 11 (Comp. St. 1916, § 9595).

**4. BANKRUPTCY ☞20(1)—EXCLUSIVE JURISDICTION.**

The bankruptcy court's jurisdiction in administration of the estates of bankrupts is essentially exclusive.

**5. BANKRUPTCY ☞20(2)—VOLUNTARY PROCEEDINGS—EXCLUSIVE JURISDICTION —RECEIVER IN STATE COURT.**

The bankruptcy court's exclusive jurisdiction is not affected in case of voluntary bankruptcy by the fact that more than four months before institution of the proceedings a receiver was appointed in a suit against a bankrupt in a state court.

**6. BANKRUPTCY ☞20(1)—LIENS—CONFLICTING JURISDICTION.**

The bankruptcy court should not remit to the state court the right to administer, where there is reasonable ground to believe there will be a surplus for unsecured creditors, or where division between lien creditors as to method of administration is inevitable.

In Bankruptcy. In the matters of the Grafton Gas & Electric Light Company, bankrupt, the Grafton Traction Company, bankrupt, and the Grafton Light & Power Company, bankrupt. Heard on motions of state court receivers and others to vacate injunction and appointment of trustee. Motions overruled, stay of trustee vacated, and trustee and referee directed to proceed.

T. S. Riley and John J. Coniff, both of Wheeling, W. Va., and Warder & Robinson, of Grafton, W. Va., for bankrupts.

G. W. Ford and A. W. Burdett, both of Grafton, W. Va., and Geo. W. McClintic, of Charleston, W. Va., for opposing creditors.

DAYTON, District Judge. These three local corporations have each filed petitions and been adjudicated voluntary bankrupts.

The first named was incorporated for the purpose of manufacturing and supplying electricity for light, heat, and power; the second for the purpose of operating a city street railway; and the third to (1) acquire, lease, own, maintain, build, and operate lines of street and interurban railways; (2) acquire water, coal, oil, gas, electric, steam, and other light, heat, water, and power plants; (3) acquire, own, and operate telephone and telegraph lines and exchanges; (4) acquire coal, oil, gas, and other mineral lands, and manufacture, ship, and sell their products; (5) produce light, water, steam, heat, electricity, oil, gas, and power of all kinds, and sell the same; (6) lease and purchase easements over streets, etc., lay and erect poles, lines, and pipes to transport light, heat, oil, etc., and to operate telephone and telegraph lines, and street and interurban railways for transportation of passengers, mail, freight, and express matter; and (7) to acquire, lease, and own property, real, personal, and mixed.

This latter company by deeds has taken over and into its possession the property of the first two named companies. Its principal stockholder assumed payment of their debts, but has not paid them.

Judgments have been rendered against the first named for an aggregate of more than $27,000, and it acknowledges itself to owe unsecured debts aggregating more than $116,000; against the second named company judgments have been rendered aggregating more than $71,-000, and unsecured debts are outstanding against it of over $173,000; while against the third judgments have been rendered for an aggregate of over $21,000, a bond issue of $300,000 is outstanding, and over $17,000 of unsecured debts. In addition to all this an unsecured debt of over $3,000 exists against the three companies jointly and over $2,300 of taxes are in arrear upon the properties. These facts are disclosed by the schedules filed, which state the assets of the first and second companies to be nothing, by reason of their conveyances of February 28, 1914, to the third, and those of the third to be $400,000, consisting of its electric plant, something over six miles of electric street railway in the city of Grafton, its equipment, etc., and of certain real estate in that city.

The Allis-Chalmers Manufacturing Company, a judgment creditor in a sum of over $900, has instituted its equity suit to enforce its lien against the property of the first company (the Gas & Electric), conveyed by it to the third, and the city of Grafton, a judgment creditor in a sum in excess of $4,000, the Citizens' National Bank of Charleston, a judgment creditor in a sum in excess of $11,000, and the Ferris Bridge Company, whose interest is not disclosed by the petitions and schedules, have instituted like suits against the second company (the Traction). These four suits have been consolidated, are pending in the circuit court of Taylor county, and receivers have been appointed therein, and placed in possession of the properties now vested in the third company since the conveyance of February 28, 1914. The order of adjudication entered in the third named cause enjoined these creditors from the prosecution of their suits until this court's further order, and the referee to whom the causes were referred has appointed a trustee to take charge of the properties from the custody of the state court receivers. To vacate the injunction granted by the court, and the appointment of the trustee by the referee, petitions have been filed and motions made by the state court receivers, the Citizens' National Bank of Charleston, and the city of Grafton.

These petitions have given rise to questions which I have studied long and earnestly, and which have perplexed me greatly. In the conclusion I have reached I desire frankly to say that I still entertain grave doubt, and regret we have no provision of federal law whereby such questions could be certified direct to the appellate court for its authoritative determination. I desire to express my appreciation of the labor and industry incurred by counsel on both sides in the preparation and presentation of the very admirable briefs filed by them to aid me in the decision.

[1, 2] The first question that arises is: Did I err in adjudicating these companies, either one of them, and especially the last one, bankrupt? The Bankruptcy Act (Act July 1, 1898, c. 541, § 4a, 30 Stat. 547 [Comp. St. 1916, § 9588]) provides:

"Any person, except a municipal, railroad, insurance, or banking corporation, shall be entitled to the benefits of this Act as a voluntary bankrupt."

The business of the first company was unquestionably that of operating a plant to generate and sell electricity; that of the second, to construct and operate a street railway; that of the third, to combine and operate both. In addition to the above provision of the Bankruptcy Act, and before its amendment in 1910, it had been held that in involuntary proceedings an electric light corporation could be adjudged bankrupt. In re Charles Town Light & Power Co. (D. C.) 183 Fed. 160, affirmed by the Circuit Court of Appeals for this circuit in Charles Town Light & Power Co. v. Delone, 184 Fed. 986, 106 C. C. A. 488. There can be no question, therefore, that the first company was properly adjudicated.

As to the second, the trouble comes here: Is a "street railway" operated by electricity within the meaning and intent of the word "railroad" used by the Bankruptcy Act? If so, then it is clear the second named company was improperly adjudicated. Finally, if a company manufacturing and selling electricity can be adjudicated, while a company operating a street railway by electricity cannot, what is to be done with a company like the third here, which is doing both? I can find no answer to these questions in any adjudicated case construing this particular section of the Bankruptcy Act. As to the question whether the word "railroad," by legal construction generally applied, shall include street railways, the authorities, state and federal, are in hopeless confusion. I am therefore left, so far as I can see, to construe the meaning of this word "railroad," as used in this section, as a question of first impression. Doing so, I hold it does not include electric street railways.

I am led to this conclusion (a) because I believe Congress, by the amendment of this section in 1910 (Act June 25, 1910, c. 412, 36 Stat. 839), in clause "b," whereby it cut out the words "corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits" (Act Feb. 5, 1903, c. 487, § 3, 32 Stat. 797), allowing such to be adjudicated involuntary bankrupts, and substituting the words "moneyed, business or commercial corporation except a municipal railroad, insurance or banking corporation," and by its amendment of clause "a" of this section, whereby it removed the inhibition of any corporation to be adjudged voluntary bankrupt, and provided, instead, that all could be "except municipal, railroad, insurance or banking" ones, had two purposes in view: First, to obliterate all distinctions between voluntary and involuntary proceedings in their relation to the liability of corporations, other than the ones excepted, to be declared bankrupt; second, to broaden out and more clearly define the application of the Bankruptcy Act, so as to include all corporations, as to which there were no special reasons for exception. Special reasons why municipal, insurance, and banking ones should be so excepted are obvious. So, too, such reasons can easily be conceived why the ordinary railroad transportation lines should also be excepted. They, as said by Justice Lamar in Omaha Street Ry. v. Int. Com. Comm., 230 U. S. 336, 33 Sup. Ct.

891, 57 L. Ed. 1501, 46 L. R. A. (N. S.) 385, "are constructed on the companies' own property. The tracks extend from town to town and are usually connected with other railroads, which themselves are further connected with others, so that freight may be shipped, without breaking bulk, across the continent. Such railroads are channels of interstate commerce."

These special reasons for exception do not ordinarily exist in the case of street railways. The vast majority of them are purely local institutions, like the one here, not in any way concerned with interstate commerce. Such are, again quoting Justice Lamar, "laid in streets as aid to street traffic, and for the use of a single community, even though that community be divided by state lines, or under different municipal control. When these street railroads carry passengers across a state line, they are, of course, engaged in interstate commerce, but not the commerce which Congress had in mind when legislating in 1887. Street railroads transport passengers from street to street, from ward to ward, from city to suburbs; but the commerce to which Congress referred was that carried on by railroads engaged in hauling passengers or freight 'between states,' 'between states and territories,' 'between the United States and foreign countries.'"

In so holding such purely local street railway corporations to be liable to bankrupt adjudication, I freely admit we are embarrassed by the fact that a modern tendency is to extend these electric lines for long distances through different towns and communities, and it may be through different states, which long lines, when operating in the several towns through which they pass, do so like the small, local street ones, but in operating from town to town do so upon the methods of the regular steam railroads. It may be such corporations, operating these longer lines, should be excepted from bankruptcy jurisdiction for the same reasons that steam railroads are; but I am not called on here to pass upon that question and express no opinion as to it. The corporation here is purely local, operating a short line over the streets of a single town or community. In short, my study of the Supreme Court's rule of construction, enunciated in the Omaha Case, above cited, constrains me to the conclusion that a clear distinction ordinarily exists between "railroads" and "street railways"; that, ordinarily, the latter are subject to bankruptcy jurisdiction, subject, however, to possible exceptions growing out of exceptional existing conditions.

[3-6] Having concluded that all three of these companies were properly adjudicated bankrupt, a second question arises, which, although not new, in this case to me is particularly perplexing. How far should this court go toward assuming exclusive jurisdiction in the administration of these three estates; or, stated conversely, how far is it justified in either allowing or calling upon the state court to ascertain the liens existing against them and to enforce payment thereof out of such assets?

That the order staying the prosecution of these suits was justified seems apparent, and was based upon section 11 of the Bankruptcy Act (Comp. St. 1916, § 9595). Under it a stay of at least 12 months

after adjudication is provided for. In these cases it is admitted that many months ago the four suits were instituted in the state court, that they have been there consolidated, receivers therein appointed who have taken possession of the properties, reference to a master to ascertain liens has been had, and much cost incurred.

Prior to the amendment of 1903 of the Bankruptcy Act, the cases of Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, and Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, clearly applied the general rule applicable in other cases of conflicting jurisdiction, that the court first assuming jurisdiction, and taking possession of the assets, should retain it. These cases were decided December 1, 1902. On February 5, 1903, Congress amended the Bankruptcy Act by providing that acts of bankruptcy would exist if a person, "being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States" (Comp. St. 1916, § 9587). In May following the Supreme Court handed down its decision in Re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, in which, construing the effect of this amendment, it holds:

"1. The jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is essentially exclusive.

"2. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent by the receiver of another court appointed in a subsequent suit, and although that rule has only a qualified application when winding up proceedings in a state court are superseded by proceedings in bankruptcy, it obtains as a rule of comity, and its considerate observance is adequate to avert collisions between federal and state courts."

This ruling, that the bankruptcy court's jurisdiction is essentially exclusive, has been since reiterated in many cases. Roger v. Levert Co., 237 Fed. 737, 150 C. C. A. 491; In re Mullings Clothing Co., 238 Fed. 58, 151 C. C. A. 134, L. R. A. 1918A, 539; Orinoco Iron Co. v. Metzel, 230 Fed. 40, 144 C. C. A. 338; Commercial Trust & Savings Bank v. Busch-Grace Produce Co., 228 Fed. 300, 142 C. C. A. 592; State of Missouri v. Angle, 236 Fed. 644, 149 C. C. A. 640; Pollack v. Meyer Bros. Drug Co., 233 Fed. 861, 147 C. C. A. 535; In re Louis Neuburger, Inc., 240 Fed. 947, 153 C. C. A. 633. The Supreme Court, in United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055, has confirmed this ruling in its Watts Case in fuller and more specific terms. It there says:

"A distinct purpose of the Bankruptcy Act is to subject the administration of estates of bankrupts to the control of tribunals having authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are bankruptcy courts. Under the Bankruptcy Act, the jurisdiction of the bankruptcy court in all proceedings in bankruptcy is intended to be exclusive of all other courts; such proceedings include matters of administration, such as allowance and rejection of claims, reduction of the estate to money and its distribution, preferences and priorities to be accorded to claims and supervision and control of the trustee."

Under the authorities cited, and especially this last Supreme Court one, it is difficult to perceive where much opportunity or right to ex-

ercise comity toward state court jurisdiction longer exists in the administration of the estates of bankrupts.

Turning to the decisions of the Circuit Court of Appeals for this circuit, we find that court in the case of New River Coal Land Co. v. Ruffner Bros., 165 Fed. 881, 91 C. C. A. 559, held (a) the jurisdiction of the bankruptcy court, if appealed to within four months, to be exclusive, and (b) that it was a question of sound discretion for it to determine whether the state court would be stayed or permitted to administer. In Bank of Andrews v. Gudger, 212 Fed. 49, 128 C. C. A. 505, it was held that the exclusive jurisdiction of the bankruptcy court could be assumed more than four months after the institution of the state court cause, upon certain then existing conditions. Bank of Dillon v. Murcheson, 213 Fed. 147, 129 C. C. A. 499, affirmed the exclusive jurisdiction and the discretionary right to allow the state court to administer in the exercise of ·comity, but discouraged the exercise of it.

In Graham v. Davy-Pocahontas Co., 238 Fed. 488, 151 C. C. A. 424, it was held that the bankruptcy court is not deprived of its exclusive jurisdiction, although the sole act of insolvency charged is the appointment of a receiver by a state court in a suit more than four months old; the appointment of the receiver by it having been made within four months of the institution of the bankruptcy proceeding. This case, it seems to me, is important, because of its bearing upon the constantly assumed position taken by counsel interested in maintaining the state court jurisdiction in this class of cases, that the four months period is controlling and if the state suit has been pending and a receiver has been appointed more than that length of time the bankruptcy court should not take over the estate and administer it, but allow the state court to do so. In this Graham Case it is held, if I interpret aright, immaterial how long the state court suit has been pending, but in the exceptional case where one is sought to be forced into involuntary bankruptcy alone on the ground of the appointment of a receiver such appointment must have been within four months, because the act requires ·some act of bankruptcy to have been committed within four months before involuntary proceedings can be maintained at all. No such condition can ever arise in a voluntary proceeding; therefore, in such cases, I am constrained to believe the "four months period" has no relevancy whatever.

Finally, in Union Electric Co. v. Hubbard, 242 Fed. 248, 155 C. C. A. 88, it was held substantially to be an abuse of sound discretion for the bankruptcy court to remit to the state court the right to administer (a) when there exists any reasonable ground to believe there will be a surplus after payment of liens, or (b) where there is any division of agreement among lienholders as to the method or tribunal of administration. I decided this Union Electric Co. Case, and also the U. S. Fidelity & Guaranty Co. v. Bray Case, supra, in the court below. They are two examples of where I undertook to extend comity in bankruptcy administration and was held not warranted in doing so. I frankly say the clear reasonings of Judge Boyd, speaking for the Circuit Court of Appeals in the Bray Case, of Justice Van De-

vanter, speaking for the Supreme Court in the same case, and Judge Smith, speaking for the Circuit Court of Appeals in the Hubbard Case, have fully convinced me that I was not so warranted, and further have led me to the conclusion that this extension of comity should be sparingly exercised.

Applying the rule laid down in the Hubbard Case by Judge Smith to the facts here, I am not prepared to hold that there exists no reasonable ground to believe that the unsecured creditors can realize nothing from the assets of these companies. It is strongly insisted that such is the case, and it may be so. Yet the properties are valuable. Leaving out the general bond mortgage, the extent and validity of which as a lien is not disclosed fully, the secured debts or liens aggregate somewhat more than $119,000, while the unsecured debts aggregate more than $306,000. I do not feel myself justified in saying the holders of this large amount of unsecured indebtedness will be unable to realize anything. It is to be borne in mind that the state court has jurisdiction only to ascertain and decree liens, as I understand the bills filed therein are only brought to enforce liens, not to dissolve the corporations, which can be done in West Virginia only under certain conditions provided for by special legislative acts. Further, it is to be remembered that the pendency of the bankruptcy proceedings, and they cannot be dismissed against protest of creditors, renders inoperative any effort on the part of these unsecured creditors to secure liens by judgment or otherwise that would be provable as such in the state court proceedings; and it is also to be borne in mind that the Circuit Court of Appeals has held in the Hubbard Case that—

"The action of judicial tribunals of competent jurisdiction cannot be indicated or required in advance. If the property in question should properly be turned over to the state court, it should be turned over without reservation or condition as to the after judicial action of that court."

But, aside from this, Judge Smith lays down in the Hubbard Case another limitation upon the exercise of this right to extend comity, to wit, where "there is any division or agreement among the lien creditors entitled as to the method or tribunal of administration." Enough has been disclosed to show that "division as to method of administration" between these lien creditors is inevitable. The segregation of the property of these individual companies, now held as a whole by the third, and the fixing of the liens thereon will inevitably create bitter contest.

All these things considered, much as I would welcome a release for this court from the labor involved in the administration of these involved estates, I am constrained to conclude that it cannot refuse the assumption of it. The motions made to dissolve the injunction, and to discharge the trustee, must be overruled, the order staying the trustee appointed by the referee from taking possession of the properties must be vacated, the order of the referee directing him to take such possession must be enforced, and the referee be directed in due course to proceed with the administration of these estates.